UNITED STATES of America,

v.

John Ramiro CASTANO–VARGAS
Defendants.

No. 95CR.894(DAB).

United States District Court,
S.D. New York.

Dec. 11, 2000.

Marcia Cohen, Washington, DC, for U.S.

B. Alan Seidler, Nyack, NY, for defendant.

### *MEMORANDUM & ORDER*

BATTS, District Judge.

This is a complicated criminal case involving a Defendant with a long history of drug charges and cooperation with the Government in both the Southern and Eastern Districts of New York (the latter a sealed record unknown to this Court or the parties before this Court), masquerading as a simple guilty plea which took place on November 6, 1995, and which yet again eludes closure before this Court through sentencing.

The Defendant pled guilty pursuant to a cooperation agreement with the Government with the intent and purpose of obtaining a § 5K1.1 letter on his behalf from the Government. Pursuant to what is apparently the Government's policy in these matters, the Defendant was required to allocute to four Counts, at least two of which were crimes of which the Government was not aware before the Defendant informed them. Count Two apparently is a crime identical to the one charged and sealed in the Eastern District, so it is at least arguable whether or not the Government would have learned of it independently of the Defendant. Unfortunately for the Defendant, his subsequent criminal activity (consisting of a drug arrest in August of 1997) was deemed a breach of the agreement and thus he is before the Court for sentencing without the benefit of a § 5K1.1 letter.

The procedural history before this Court hints somewhat at the underlying complexities and denials by the Defendant.[1] Familiarity with the record before and submissions to this Court is assumed.

The Court writes at this juncture to clarify the record and to rule on outstanding defense motions.[2]

---

1. Defendant pled before this Court on November 6, 1995, and his sentencing date has since been adjourned no fewer than five times at the behest of the Defendant, for various reasons having initially to do with providing the Defendant an opportunity to cooperate with the Government, and later to accommodate the Defendant's hiring and firing of a succession of three attorneys. At a status conference on May 15, 2000, this Court set the due date for any motions prior to sentencing on August 17, 2000, which was subsequently extended to September 15, 2000 at the request of the Defendant.

2. Even though not required to provide advance notice (*United States v. Rivera,* 96 F.3d 41, 43 (2d Cir.1996)), the Court herein does so.

*Withdrawal of Guilty Plea*

Defendant has moved several times to withdraw his 1995 guilty plea; the Court has denied those motions for the reasons given at those times.[3] The most recent date for sentence was November 30, 2000. That date had been set in mid-October, 2000, after the receipt of both the Government's and Defendant's response to the Pre–Sentence Report ("PSR"). The week before, Chambers heard murmurings from the able and fiercely zealous defense attorney, Alan Seidler, that his client wanted to make another motion, this time having to do with matters related to the recent Supreme Court case of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (hereafter *"Apprendi"*), and its progeny. However, no actual motion was proffered to the Court until the proceeding on November 30, 2000, due to what Mr. Seidler characterized as problems with the Post Office. *See* Nov. 30, 2000 Tr. at 4. The Court declined the motion papers, inviting the defense attorney instead to explain on the record what the basis for his motion was and its supporting authority.

Mr. Seidler explained that his client wished to withdraw his guilty plea (again) because, while the charging Information did set forth the quantities of drugs in Count Two, the Defendant did not allocute to any amounts during his plea to Counts One or Two. Counts One and Two charged the Defendant with drug conspiracies, pursuant to 21 U.S.C. § 846, to violate 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

The Court took a recess to review the two out-of-circuit cases on which Mr. Seidler indicated his client was relying in order to support the withdrawal of his guilty plea: *U.S. v. Rogers,* 228 F.3d 1318 (11th Cir.2000) and *U.S. v. Aguayo–Delgado,* 220 F.3d 926 (8th Cir.2000). Upon review of the cases and further inquiry by the Court, it appeared that the Defendant was arguing that on his allocution he could not be sentenced under 21 U.S.C. § 841(b)(1)(A) or (B), since the quantities of the drugs involved had not been established beyond a reasonable doubt. Quoting the *Rogers* case into the record,[4] the Court asked if the appropriate remedy for the alleged plea deficiency was not as set forth in that case. Both defense counsel and the Government agreed with the Court that, if the Defendant were to be sentenced under 21 U.S.C. § 841(b)(1)(C), a section with a twenty year maximum statutory sentence, that the proffered motion would become moot. *See* Nov. 30, 2000 Tr. at 17–18.

Our Circuit has yet to weigh in on the effect of *Apprendi,* particularly in cases where conviction was by guilty plea (as indeed was the case in *Apprendi* itself) and/or where neither the charging instrument nor the Defendant (or the Court in explicit questions) as part of his guilty plea allocution, has specified a quantity of drugs or money. In light of *Apprendi,* this Court finds that if a person is convict-

---

**3.** Defendant's first attorney, Mr. Votto, first made similar arguments on March 6, 1999 in his objections to the PSR. Mr. Seidler reiterated these arguments at a status conference before this court on May 15, 2000, and subsequently in his objections to the PSR, by letter dated September 15, 2000. *See* May 15, 2000 Tr. at 48.

**4.** "In short, we hold today that drug quantity in Section 841(b)(1)(A) and Section 841(b)(1)(B) cases must be charged in the indictment and proven to a jury beyond a reasonable doubt in light of *Apprendi.* Applying the rules to the facts at hand, it is clear that Rogers must be sentenced under Section 841 without reference to drug quantity. In effect, the jury verdict convicted him only of manufacturing, possessing, or distributing an undetermined quantity of crack cocaine. Because section 841(b)(1)(A) and Section 841(b)(1)(B) both turn upon the amount of crack cocaine at issue, those two subparts are inapplicable to this case. Therefore, Rogers may only be sentenced under Section 841(b)(1)(C), which provides punishment for conviction of an undetermined amount of crack cocaine." November 30, 2000 Tr. at 11–12 (quoting *Rogers,* 228 F.3d at 1327–1328).

ed of a § 841 violation and no quantity is found beyond a reasonable doubt, sentencing is still appropriate under § 841(b)(1)(C). It would also appear that as long as the statutory maximum is not exceeded by the guideline range at issue, that the holding of *Apprendi* and its progeny is not implicated.

It is clear to this Court that the Defendant is not happy with the position in which he finds himself, having breached the cooperation agreement with the Government after allocating to four Counts. There is no question that the Defendant was advised and cautioned by the Court of the consequence of his guilty plea and the fact that he could not withdraw it, regardless of the sentence imposed.[5] It is clear that the Defendant, under oath, responded that he was pleading voluntarily and without coercion, that he was satisfied with his attorney at the time, that he was pleading guilty because he was guilty.[6]

Accordingly, the remedy for the Defendant's current displeasure with his posture before this Court for sentencing is not to withdraw his guilty plea—as there is no basis upon which to withdraw it[7]—but rather to address his arguments for the Court's consideration in mitigation of sentence. There is nothing in the cooperation agreement which precludes the Defendant from raising the arguments Mr. Seidler has made to the Court on November 30, 2000. The Court will consider Defendant's arguments accordingly as follows.

*Appropriate Guideline Offense Level*

A. Counts Three and Four of the Information

At his guilty plea, the Defendant waived venue on Counts Three and Four. Based on the grouping of counts for the calculation of the Offense Level in the PSR, Counts Three and Four of the instant Information (Group Two), do not add to the Offense Level attributed to the Defendant at all. Essentially, the disparity in Offense Levels between Group Two and Group One (Counts One and Two) is so great that they are discounted totally in the initial calculation. They do, however, play some detrimental role, as will be discussed shortly.

B. Counts One and Two of the Information

The Court notes that at a hearing on May 15, 2000, Mr. Seidler, on behalf of his client, sought to challenge the propriety of the Government in this case charging the

---

5. "THE COURT: Do you also fully understand that even if your sentence is different from what your attorney or anyone else told you it might be, or if it is different from what you expect, you will still be bound to your guilty plea and you will not be allowed to withdraw your plea of guilty?

THE DEFENDANT: Yes, your Honor."
Nov. 6, 1995 Tr. at 11.

6. *See* Nov. 6, 1995 Tr. at 3–4; 12; 18–19.

7. After consideration at a status conference of May 15, 2000, this Court previously has denied Defendant's motion to withdraw his guilty plea:

" . . . . .

THE COURT: Based on the record before me, there is nothing that would convince me that there is a basis for this plea to be withdrawn. I understand the circumstances here. Mr. Castano–Vargas finds himself in a most undesirable position. He had a § 5K1 letter, and indeed had there been no difficulties and had he gotten this § 5K1 letter we wouldn't be going through these proceedings right now, there would be no effort to withdraw the guilty plea and he would be standing on the benefits that he would be getting from that § 5K1 letter.

. . . . .

THE COURT: "Let's make sure the record at this point is clear. To the extent that the Defendant has made a motion to withdraw his guilty plea, that request in a motion is denied."
*See* May 15, 2000 Tr. at 40, 48.

In addition, Defendant himself submitted to this Court a motion purporting to move "in pro se, with the assistance of counsel B. Alan Seidler" to withdraw his guilty plea at a time when he was still represented by Mr. Seidler, who informed the Court he was not aware of any such motion. By Order dated October 3, 2000, this Court denied Defendant's purported motion to renew his motion to withdraw his guilty plea.

Defendant with a crime that had been charged and allegedly dismissed in the Eastern District of New York. There has been nothing produced to this Court that suggests that the dismissal of those charges in the Eastern District, if that indeed occurred, had any preclusive effect on the Government in the Southern District of New York. Indeed, on November 30, 2000, Mr. Seidler acknowledged that the dismissal in the sealed proceedings in the EDNY was without prejudice. *See* Nov. 30, 2000 Tr. at 28.

At the guilty plea before this Court on November 6, 1995, the Government made clear that the venue was being waived for Counts Three and Four only; Counts One and Two had independent bases for venue in the Southern District of New York. *See* Nov. 6, 1995 Tr. at 15–16. Accordingly, venue for Counts One and Two is totally appropriate in the Southern District of New York, with no need for any waiver by the Defendant. As to Counts Three and Four, the Court finds that the waiver was knowingly and intelligently made.[8]

On November 30, 2000, the Defendant conceded that the appropriate Offense Level for Count One is 32. *See* Nov. 30, 2000 Tr. at 47–48. However, the Defendant challenges the Offense Level of 38 for Group One (Counts One and Two), as computed in the PSR. The Parties agree that Count One, which does not set forth any specific amount of drugs, has an Offense Level of 32, presumably for one kilogram of heroin; Count Two, as charged, would also have an Offense Level of 32 (five kg. of cocaine and one kg. of heroin). Combining the one kilogram of heroin in Count One and the one kilogram of heroin and five kilograms of cocaine in Count Two would still result in an Offense Level of 32.

However, the six level increase in the calculation of the Offense Level for Count Two is based solely on information given by the Defendant to the Government during proffer sessions. Based on that information (see ¶¶ 17 and 31 of the PSR) and as referenced in the Cooperation Agreement,[9] the amount of cocaine for Count Two is placed at 400 kilograms of cocaine and 2 kilograms of heroin, resulting in an Offense Level for Count Two of 38, and thus for Group One as a whole as well. The Government acknowledges this.[10] Indeed, the Defendant has moved for a downward departure to Offense Level 28,[11] pursuant to § 5K2.16 of the Sentencing Guidelines.

■ The Court recognizes that the increased Offense Level is based solely on Defendant's admissions to the Government during his proffer sessions and cooperation. Nevertheless, the Court does not agree that § 5K2.16 is an applicable basis for a downward departure here, since it was not remorse, for example, but a perceived opportunity to help himself by being considered for and obtaining a § 5K1.1 letter that motivated the Defendant's self-incriminating disclosures to the Government. Moreover, it was the Defendant's subsequent criminal conduct that deprived him of that letter.

The Defendant found himself, as any Defendant seeking to cooperate with the Government finds him or herself, between the Scylla of self-incrimination and Charybdis of no § 5K1.1 letter for lack of candor. He supplied that information to the

8. *See* Nov. 6, 1995 Tr. at 16–17.

9. *See* Govt. Lttr. dated September 21, 1995 at 3 ("[A] conspiracy with individuals known to JOHN RAMIRO CASTANO–VARGAS as "Harold" and "Juan Prosada" to distribute heroin and in excess of 400 kilograms of cocaine, from 1998 through 1992[.]").

10. *See* Govt. Lttr. dated October 16, 2000 at 3.

11. As per Defendants submitted objections to the PSR, dated September 15, 2000. *See* Def. Lttr. at 1. Notably, on November 30, 2000, however, Defendant agreed that the appropriate Offense Level for Count 1, at least, is 32. He seeks a downward departure only as to Count 2. *See* Nov. 30, 2000 Tr. at 40–41; 52.

Government in an effort to earn a § 5K1.1 letter, which could have taken the sentencing options out of the Guideline Offense Level calculations entirely—not an insignificant incentive for a Defendant. Had the Defendant not subsequently committed another drug offense in 1997, which the Government chose to dismiss and which would have exposed the Defendant to mandated consecutive sentences since he committed them while on bail from his offense before this Court (see 18 U.S.C. § 3147 and § 2J1.7 of the Sentencing Guidelines), he very well might have received the coveted § 5K1.1 letter. Indeed, the Government's decision not to indict him for the 1997 offense could be viewed as a prosecutorial "bonus", even if not the one initially anticipated by the cooperation agreement.

### C. Totality of the Circumstances Departure Under § 5K2.0

However, the Court is not wholly unsympathetic to the draconian impact on the Defendant of revealing all, then, admittedly, totally through his own subsequent crime, losing the benefit of his bargain. It is clear that the relevant conduct attributed to Count Two, solely through the mouth of the Defendant and with no independent verification or investigation of the Government, has added six levels to his Offense Level in Group One.

 The Defendant also seeks to challenge the use of information given to the Government when he was proffering and cooperating because it subjects him to a Criminal History Category level of II, and thus makes him ineligible for "safety valve" relief from the mandatory minimum sentence, as well as deprives him of a 2 point reduction in his Offense Level pursuant to § 2D1.1(b)(6). The Defendant is correct that his confession of commission of the crimes charged in Counts Three and Four, committed while he was on probation from a state robbery offense, does add two points, which raises him to a Criminal History Category of II. The determination on November 30, 2000 that the Defendant is to be sentenced pursuant to 21 U.S.C. § 841(b)(1)(C) moots the mandatory minimum argument. It does not, however, address the resultant loss of a two level decrease in his Offense Level nor being raised to Criminal History Category II.

Out of his own mouth and through no other source, the Defendant finds himself before this Court for sentencing with a Criminal History of II instead of I, and an Offense Level of 35 (having been credited with a three point decrease for acceptance of responsibility) instead of 27 (32, minus 3 for acceptance or responsibility and minus 2 for safety valve eligibility).

Additionally, Defendant argues that there should be an equitable estoppel (admitting there is no legal one) for being charged here with Count Two and its relevant conduct in the first instance. According to Mr. Seidler, the Defendant performed feats of heroic proportions for the EDNY in their sealed proceeding,[12] resulting with that charge being dismissed without prejudice. The EDNY charge is identical to the crime charged in Count Two, according to the Defendant; the Government does not dispute this.[13]

---

12. Mr. Seidler stated that as a direct result of his cooperation efforts with the Government, Mr. Castano–Vargas suffered from a gunshot wound to the leg and was imprisoned in Ecuador. The U.S. Government had him extricated after a month for the purposes of continuing his cooperation. *See* Nov. 30, 2000 Tr. at 29.

13. It is equally clear to this Court that, despite representations from Defense Counsel and the Court, the only charge before me that was brought in the EDNY is Count Two. *See* discussion *infra* at ftn. 15. The PSR prepared for the case in the Eastern District of New York, 93 CR 568, makes clear that the one-count information charged that between February 1992 and September 13, 1992, the Defendant and others conspired to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). *See* PSR dated Aug. 3, 1993 at 3. The activities cited correspond to those related to Count 2 of the instant Information. *See* PSR dated July 21, 2000 at 5.

The question for this Court at this juncture, then, is whether, on the unique substantive and procedural facts of this case, the Court should exercise its discretion to make a downward departure under § 5K2.0 of the Sentencing Guidelines on the theory that the totality of the circumstances of these facts are beyond the heartland considered by Congress in enacting the Sentencing Guidelines and their applicability exceptions. *See* U.S.S.G. § 5K2 .0, comment. (recognizing that combination of circumstances or offender characteristics may remove a case from the heartland). *See also United States v. Core*, 125 F.3d 74, 77 (2d Cir.1997) ("a sentencing court 'is free to consider, in an unusual case, whether or not the factors that make it unusual ... are present in sufficient kind or degree to warrant a departure.' ") (citing *United States v. Rivera*, 994 F.2d 942, 949 (1st Cir.1993)); *United States v. Rioux*, 97 F.3d, 648, 663 (2d Cir.1996) (holding that in "extraordinary" cases, a sentencing judge may depart downward under § 5K2.0 based on combination of factors that might not warrant a departure when considered individually).

■ Notably, however, the § 5K2.0 downward departure cannot be made where the factual basis of the defendant's motion has been considered and rejected by the Government as a basis for a § 5K1.1 downward departure. *See United States v. El–Gheur*, 201 F.3d 90, 93 (2d Cir.2000) (denying a substantial assistance departure under § 5K2.0 which defendant was unable to obtain through the usual channel of § 5K1.1). That is not the case here, where the unique circumstances arise not from the Defendant's actual cooperation efforts on the Information before this Court, but rather from the previous resolution of the activities underlying Count Two in the EDNY case.

In considering the appropriateness of a departure, the Court is acutely aware that the occasion to consider a departure here is necessitated by the Defendant's own criminal conduct which lost him the § 5K1.1 letter. Indeed, because his criminal conduct is the cause of his sentencing posture before the Court, it is arguable that this alone should deprive him of any further consideration. Nevertheless, it is clear that his punishment for his 1997 criminal conduct has already been inflicted by his Offense Level of 32, with no mitigating letter from the Government. The question is whether additional punitive ramifications of an aborted cooperation agreement, where the Defendant faces three additional counts in a pumped up Information pursuant to Government policy, when they are brought about solely by the Defendant's self-serving candor, should be heaped on in their entirety as he stands before this Court for sentencing.

No defendant has a right to a cooperation agreement and its benefits. When the Government determines to offer a cooperation agreement to a defendant, it has its own internal policies, expectations and motives for the terms and conditions that it attaches. As an initial test of credibility, defendants are expected to be forthcoming and truthful in making full disclosure of their own criminal activity. One of the purposes in having cooperating defendants plead to multiple counts may be an attempt to suggest an arms length relationship between the defendant and Government or to minimize defense arguments that the Government made easy bargains with cooperators. In any event, the Defendant here agreed to plead to the four count Information as part of his bargain; it appears that three of those counts (Counts Two, Three and Four) resulted solely from his candor with the Government.

The Court finds that a downward departure may be warranted pursuant to U.S.S.G. § 5K2.0, due to the unique circumstances of this case. Accordingly, the Court feels constrained to consider a balance between the overly harsh full impact of self-revealed crimes on the Defendant without a § 5K1.1 letter and the fact that, had the Defendant lived up to the agree-

ment, the Court would have had extremely broad discretion under the liberating effect of a § 5K.1.1 letter. On the facts of this case it would seem that some, but not all, of the ramifications of an aborted cooperation agreement should be endured by the Defendant who has committed a subsequent crime.

■ The PSR reflects an additional six Offense Levels in Count Two for related conduct, all derived from Defendant's own statements to the Government. (Offense Level of 38 instead of 32; see ¶¶ 17 and 31 of the PSR).[14] He has a Criminal History Category of II instead of I—again, all out of his own mouth (See ¶ 65 of the PSR). Because he has a Criminal History Category of II, he doesn't qualify for a "safety valve" two point decrease in Offense Level.

Loss of the benefit of the § 5K.1.1 letter strips the Defendant of any mitigating considerations before this Court on Count One with an Offense Level of 32. The additional consequences of a six level increase in the Offense Level, a Criminal History Category of II, no "safety valve" Offense Level decrease, under the totality of the circumstances, would seem to be beyond the heartland of what Congress considered.

The Defendant's crime before this Court is contained in Count One; the remaining Counts are before the Court because of the Government's cooperator's policy: Count Two has allegedly already been addressed by another court in the Eastern District of New York and is therefore before me again because of prosecutorial policy, not the need to hold the Defendant accountable for it. It adds six levels to his Offense Level through relevant conduct

considerations. Accepting Mr. Seidler's representations to the Court about the extent of the Defendant's cooperation in the sealed proceedings, representations that have not been challenged by the Government, The Court finds that this six level increase, on the totality of the facts of this case, is unwarranted. Accordingly, while the Court intends to accept and adopt the Offense Level of 35, it will consider sentencing him in the guideline range of an Offense Level of 29 for Counts One and Two. An Offense Level of 29 would result if the Court does not add on the six level increase for relevant conduct for Count Two.

Counts Three and Four have not been addressed by another court.[15] They result in his Criminal History Category of II and in the loss of the "safety valve" Offense Level decrease. They do not, in and of themselves, add to the Defendant's Offense Level. To accept the Criminal History Category of II and the loss of the "safety valve" decrease is to hold the Defendant accountable for his self-confessed crimes in Counts Three and Four. Accordingly, the Court expects to adopt the Criminal History Category of II at the time of sentencing.

## D. Family Circumstances Departure

■ The Court has also reviewed the submissions from the Defendant seeking a downward departure for extraordinary family circumstances.[16] The court is aware of its authority to depart in appropriate circumstances: *Koon v. U.S.*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Galante*, 111 F.3d

---

14. Indeed, the 1993 EDNY PSR also had an Offense Level of 38 for the one count charged there.

15. Throughout the long life of this case, both Parties have asserted consistently that Counts 2, 3, and 4 were all part of the case in the Eastern District of New York. *See* Govt. Lttr. dated October 16, 2000 at 4; Def. Lttr. dated Sept. 15, 2000 at 1; Def. Lttr. dated March 26, 1999 at 2; May 15, 2000 Tr. at 2–6; Nov. 6, 1995 Tr. at 27, 37. However, according to

the PSR prepared pursuant to that EDNY case, the Defendant was charged only for activities relating to the instant Count 2. *See* supra ftn 11.

16. Specifically, Defendant cites to strong family ties and the fact he is the only financial and emotional support of his wife and eight-year old daughter. *See* Def. Lttr. dated Sept. 15, 2000 at 2–3.

1029 (1997). It is a stark fact of the criminal justice system that, in many cases, the most troublesome aspect of the case is that the just and deserved punishment of the defendant will often be felt just as deeply by his family members. The harsh impact on innocent family members is, however, the inevitable result of imprisonment for defendants with families. And it is an impact that Congress is apparently willing to impose with its family impact heartland of the Sentencing Guidelines.

As just stated, the Court is aware of the broad discretion of sentencing judges recognized by the Second Circuit in *United States v. Galante*, which on its facts, would seem to authorize a general exclusion from imprisonment wherever a convicted criminal is nevertheless a responsible parent or family member. A balancing of social considerations might indeed suggest that this is the better public policy, but it is, nevertheless, in direct contravention to the mandates of the Sentencing Guidelines, as recognized by Judge Kearse in her dissent in that case.

On these facts, there is no justifiable basis to depart for family impact considerations.

*Conclusion*

The Court finds that Defendant is to be sentenced pursuant to 21 U.S.C. § 841(b)(1)(C) and is thereby subject to its twenty-year maximum.

The Court also finds that a downward departure may be warranted under U.S.S.G. § 5K2.0, due to the unique conflation of circumstances caused by the interplay between the instant case and a 1993 case in the EDNY.

The sentencing of the Defendant is scheduled for December 13, 2000.

SO ORDERED.