# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3821

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| William John Eastman, | * | |
| | * | |
| Defendant - Appellant. | * | |

_____

Submitted:  March 10, 1998
Filed:  July 9, 1998

_____

Before WOLLMAN and LOKEN, Circuit Judges, and BATAILLON,* District Judge.

_____

LOKEN, Circuit Judge.

A jury convicted William John Eastman of one count of conspiring to distribute cocaine and methamphetamine and two counts of conspiring to launder drug proceeds. The district court[1] sentenced him to eighty-seven months in prison and five years of

_____

*The HONORABLE JOSEPH F. BATAILLON, United States District Judge for the District of Nebraska, sitting by designation.

[1]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota.

supervised release. Eastman appeals, arguing the evidence was insufficient and the court erred in refusing to grant a downward departure. We affirm.

We summarize the evidence in the light most favorable to the jury's verdict. In April 1990, Lawrence Lawler began receiving cocaine and methamphetamine in the Duluth-Superior area from his cousin Joe Sakal in California. For the next four years, Lawler or an associate periodically wired money to Sakal. Sakal and other suppliers shipped distribution quantities of drugs to Lawler by Federal Express. Lawler distributed about one-third of the drugs to Robin Birk and two-thirds to Eastman, Lawler's long-time friend. Birk and Eastman supplied the money Lawler and others wired for drugs. Over the course of the conspiracy, $250,000 was sent to California to purchase cocaine and methamphetamine for distribution in the Duluth-Superior area.

In June 1994, Lawler was arrested and agreed to cooperate. He arranged controlled buys from his sources in California and a controlled sale of two ounces of cocaine to Eastman on July 7. Eastman was then arrested. At his trial, six cooperating conspirators testified for the government. In addition to Lawler and Sakal, Duke Caballero, Sakal's California source for cocaine, testified that at some point he cut Lawler out and began dealing directly with Eastman. Richard Caffrey testified that at Eastman's request he would wire money to California under the name Bill Caballero to purchase drugs. Robin Birk testified she purchased drugs directly from Eastman on occasion. Birk also testified she gave Lawler drug sale proceeds to pay California suppliers for drugs previously shipped on consignment, or to purchase more drugs.

To sustain Eastman's conviction for conspiracy to distribute drugs, the evidence must establish that a conspiracy existed to distribute drugs, and that Eastman knew of and intentionally joined the conspiracy. See United States v. Jones, 101 F.3d 1263, 1267 (8th Cir. 1996), cert. denied, 117 S. Ct. 1566 (1997). Eastman concedes the government proved a drug distribution conspiracy but argues he was merely a customer of that conspiracy. We disagree. The government's evidence, in particular the

testimony of other conspirators, was sufficient to prove that Eastman was an active and knowing participant in the conspiracy.

To sustain Eastman's conviction for conspiracy to launder money, the evidence must prove that he knew of and intentionally joined a conspiracy to conduct financial transactions in which drug proceeds were used with the intent of promoting the conspirators' illegal drug trafficking. See 18 U.S.C. §§ 1956(a)(1)(A), 1956(c)(7)(A), 1956(h), 1961(1)(D); United States v. Jenkins, 78 F.3d 1283, 1288 (8th Cir. 1996). Eastman argues there was no proof that the money wired for drugs was the proceeds of drug distribution. In proving that drug proceeds were used to promote illegal drug activity, the government need not trace the proceeds to a particular drug sale and may rely on defendant's "involvement in drug trafficking and his lack of any legitimate source of income to raise the inference that the money wired . . . represented proceeds from drug distribution." United States v. Blackman, 904 F.2d 1250, 1257 (8th Cir. 1990). Eastman supplied much of the money that was wired to California to pay for illegal drug purchases. His tax returns do not disclose a legitimate source of income for these purchases, as he reported income of $2,006 in 1990, $3,045 in 1991, $3,171 in 1992, $4,153 in 1993, and $19,287 in 1994. Birk testified she used drug proceeds to finance her California purchases through Lawler. The evidence, including Lawler's and Caffrey's testimony and evidence that money Eastman and Birk gave to Lawler had a drug scent, was sufficient for the jury to find that Eastman knowingly participated in a conspiracy to use drug proceeds to finance illegal drug activities. That proves a violation of the money laundering conspiracy statute, 18 U.S.C. § 1956(h).

Finally, Eastman argues the district court abused its discretion in denying his motion for a downward departure based on his advanced age and poor health and the relative disparity between his Guidelines range sentence and the sentences imposed on his conspirators. The district court acknowledged its authority to depart but concluded that the facts did not justify a downward departure. The court's discretionary refusal to grant a downward departure is unreviewable on appeal. See United States v.

Kessler, 48 F.3d 1064, 1065 (8th Cir. 1995).  In addition, "disparity in sentences among [conspirators] is not a proper basis for departure."  United States v. Jones, __ F.3d __, 1998 WL 2641386 at *6 (8th Cir. 1998).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-4-