# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4098

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　 *
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　 *　District Court for the
　　　　　　　　　　　　　　　　　　*　Southern District of Iowa.
Fabian Aguayo-Delgado,　　　　　　 *
　　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　*

_____

Submitted: May 10, 2000
Filed: July 18, 2000

_____

Before BOWMAN, FLOYD R. GIBSON,[1] and LOKEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

　　A grand jury indicted Fabian Aguayo-Delgado on two counts. The first count of the indictment reads as follows:

　　From on or about November, 1997, and continuing to on or about April, 1998, the exact dates to the Grand Jury unknown, in the Southern District of Iowa and elsewhere, two or more persons, known and

_____

[1]Complications from an automobile accident have prevented Judge Gibson from reviewing this opinion prior to its being filed. The opinion is consistent with Judge Gibson's vote at conference.

unknown to the Grand Jury, including but not limited to the defendant, FABIAN AGUAYO-DELGADO, a/k/a Hugo Ruiz, a/k/a Coco, did conspire to commit an offense against the United States, namely to knowingly and intentionally distribute methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

This is a violation of Title 21, United States Code, Section 846.

The second count charged a related firearms offense, namely possessing a firearm in relation to a drug offense. See 18 § U.S.C. 924(c) (1994 & Supp. IV 1998). Aguayo-Delgado was tried before a jury. The jury instructions specified that in order to return a conviction on the first count, the jury must find that Aguayo-Delgado conspired to distribute methamphetamine, but the instructions did not make any reference to drug quantity. After deliberations, the jury convicted him on the first count and acquitted him on the second.

The District Court[2] calculated Aguayo-Delgado's sentence according to the sentencing guidelines. Based on trial testimony, the U.S. Probation Office's presentence report figured the amount of drugs ascribable to Aguayo-Delgado. The report specifically found that Aguayo-Delago was responsible for 17.68 kilograms of methamphetamine and 1 kilogram of cocaine. The methamphetamine amount alone would qualify Aguayo-Delgado for a base offense level of 38 under the guidelines, so the Probation Office did not make further calculations, although there was evidence of yet more drugs for which Aguayo-Delgado might be responsible. The highest possible base offensive level for drug distribution is 38 except in specific circumstances not found here. See U.S. Sentencing Guidelines Manual § 2D1.1 (1998).

---

[2]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

At his sentencing hearing, Aguayo-Delgado disputed the presentence report's drug quantity calculation.  The government conceded that the trial testimony relied upon in the presentence report was inconsistent at points, that the testimony may have involved double-counting, and that the amounts to which the witnesses testified were based on estimates and averages.  The District Court ultimately made a finding of a quantity of methamphetamine of "more than 3 but under 15 kilograms," which mandated a base offense level of 36.  The District Court also found that Aguayo-Delgado had possessed a gun during his drug-dealing activity and therefore applied a two-level enhancement.  See U.S.S.G. § 2D1.1(b)(1).  While noting that the jury had acquitted Aguayo-Delgado on a very similar substantive offense, the District Court found that the record supported the enhancement under the less rigorous preponderance standard applicable at sentencing.  The District Court also applied a one-level downward departure because, as a Mexican citizen, Aguayo-Delgado would be deported immediately upon completing his sentence.  Thus, the District Court found the offense level to be 37.

With a criminal history category of 2 and an offense level of 37, the sentencing guidelines normally allow for a sentencing range of 235 to 293 months imprisonment.  As required, the District Court also looked to the federal statutes that describe drug sentencing, finding an applicable mandatory minimum in 21 U.S.C. § 841(b)(1)(A) (1994 & Supp. IV 1998), which, because of the drug quantity found by the judge and because of Aguayo-Delgado's prior felony drug conviction, requires at least twenty years' imprisonment and ten years' supervised release.  The District Court therefore concluded that the applicable sentencing range was 240 to 293 months.  See U.S.S.G. § 5G1.1.  The District Court ultimately sentenced Aguayo-Delgado at the bottom of that range, the statutory minimum of 240 months.  Based on § 841(b)(1)(A), the District Court also sentenced Aguayo-Delgado to ten years of supervised release, also the statutory minimum.  The District Court did not impose a fine because it found that Aguayo-Delgado would be unable to pay, but the District Court did impose the mandatory special assessment.

Aguayo-Delgado appeals on two grounds. First, he argues that the drug quantity should have been charged in the indictment and proven to the jury beyond a reasonable doubt. Second, Aguayo-Delgado contends that the record contains insufficient evidence to support his conviction. We affirm.

I.

The District Court, not the jury, determined the quantity of drugs upon which Aguayo-Delgado's sentenced was based. Indeed, no quantity was specified in the indictment, and there is no way of knowing what quantity the jury believed the government had proven beyond a reasonable doubt. The jury returned only a determination that Aguayo-Delgado was guilty of conspiring to distribute methamphetamine. This has been the practice of the federal courts in recent times. Drug quantity determinations are made by an informal procedure, without the application of the Federal Rules of Evidence, and the burden of proof on the government is only to prove the quantity by a preponderance of the evidence, as opposed to the more difficult task of proving guilt beyond a reasonable doubt. See Note, Awaiting the Mikado: Limiting Judicial Discretion to Define Criminal Elements and Sentencing Factors, 112 Harv. L. Rev. 1349, 1350 (1999) (comparing procedural rules applicable at sentencing with rules applicable at trial).

The drug quantity determination is crucial to the statutory sentencing range. The relevant statutes have several applicable parts. First, 21 U.S.C. § 846 (1994) states that the penalty for conspiring to commit an offense in "this subchapter," which refers to 21 U.S.C. §§ 801-904 (1994 & Supp. IV 1998), shall be the same as the penalty for the crime that was the object to the conspiracy. Second, 21 U.S.C. § 841(a) defines the crime that was the object of the conspiracy, namely, distribution of a controlled substance. Third, 21 U.S.C. § 841(b) defines the penalties for violations of § 841(a), which, because of § 846, are also the penalties for conspiring to violate § 841(a).

Section 841(b) contains numerous possible sentencing ranges, based on drug type, drug quantity, a defendant's prior criminal record, and other matters.[3] Section 841(b)(1)(C) defines penalties for schedule II controlled substances, such as methamphetamine, without reference to drug quantity. Assuming that the defendant has a prior felony drug conviction, as does Aguayo-Delgado, § 841(b)(1)(C) describes a penalty of not more than thirty years' imprisonment and at least six years of supervised release. Section 841(b)(1)(A) describes penalties based on fifty grams or more of methamphetamine, and, considering a prior felony drug conviction, requires imprisonment for at least twenty years and not more than life, and also requires at least ten years of supervised release. Section 841(b)(1)(B) describes intermediate sentences based on a methamphetamine quantity of five to fifty grams.

In this case, because of his prior felony drug conviction and a finding that he was responsible for more than fifty grams of methamphetamine, Aguayo-Delgado faced a statutory range of twenty years to life imprisonment and at least ten years of supervised release. See 21 U.S.C. § 841(b)(1)(A). The sentencing range applicable to Aguayo-Delgado without reference to drug quantity would be not more than thirty years' imprisonment and at least six years' supervised release. See 21 U.S.C. § 841(b)(1)(C). These sentencing ranges are independent of the sentencing guidelines, for the guidelines calculation cannot produce an applicable sentence above the maximum or below the minimum authorized by the applicable statute defining the crime and setting the possible punishment. See U.S.S.G. § 5G1.1. Indeed, the constitutionality of the guidelines system is premised upon this assumption. See Mistretta v. United States, 488 U.S. 361, 396 (1989) ("[The guidelines] do no more than fetter the discretion of sentencing judges to do what they have done for generations—impose sentences within the broad limits established by Congress."); see also id. at 391, 395.

---

[3]We only discuss those relevant to Aguayo-Delgado, namely penalties based on methamphetamine applicable to an individual with a prior felony drug conviction. We also omit discussion of applicable fines, which are not relevant in this case.

We have upheld this system before. In United States v. Wood, 834 F.2d 1382 (8th Cir. 1987), the defendant was convicted under 21 U.S.C. § 846 for conspiring to distribute drugs and challenged his mandatory minimum sentence under § 841(b)(1)(A) on the grounds that drug quantity was not charged in the indictment or proven to the jury beyond a reasonable doubt. We concluded that § 841(b) contains sentencing provisions, not the elements of substantive crimes. See id. at 1388-90. Therefore, we said, Wood's claim must fail because "there is no constitutional right to jury sentencing, even where the sentence turns on specific findings of fact." Id. at 1390. Wood has been followed repeatedly despite numerous challenges. See, e.g., United States v. Olness, 9 F.3d 716, 717 (8th Cir. 1993), cert. denied, 510 U.S. 1205 (1994).

The Supreme Court raised doubts about this holding of Wood in Jones v. United States, 526 U.S. 227 (1999). In interpreting the federal carjacking statute, 18 U.S.C. § 2119 (1994 & Supp. IV 1998), the Court concluded that the statute was ambiguous as to whether an increased penalty for "serious bodily injury" during a carjacking was a sentencing factor or an element of a different, more serious, substantive offense. Citing the rule of constitutional doubt, the Court held that "serious bodily injury" was an element of a different substantive crime. Interpreting the statute otherwise, the Court said, the statute would run afoul of the principle that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Jones, 526 U.S. at 243 n.6. While noting that "prior cases suggest rather than establish this principle," id., the Court concluded that it was required to interpret the statute to avoid the constitutional question.

In the recent United States v. Grimaldo, ___ F.3d ___, Nos. 99-1317, 99-2177, 2000 WL 709498 (8th Cir. June 2, 2000), this Court addressed the impact of Jones on 21 U.S.C. § 841(b) and Wood. Grimaldo had been sentenced pursuant to § 841(b)(1)(A) and argued that, based on Jones, drug quantity must be charged in the indictment and proven to the jury beyond a reasonable doubt. We concluded,

consistent with <u>Wood</u>, that the statute evidenced a clear legislative intent to make drug quantity a sentencing factor, not an element of a different substantive offense. <u>See</u> <u>id.</u> at *4. Thus, the statutory analysis in <u>Jones</u> did not apply. As to the constitutional principle discussed in <u>Jones</u>, we noted that the Supreme Court refrained from articulating a new constitutional rule. Because Grimaldo had not raised the <u>Jones</u> issue in the district court (<u>Jones</u> had not yet been decided), we reviewed only for plain error. We concluded: "We are not certain that the Constitution requires [the principle discussed in <u>Jones</u>]. Until this constitutional principle is established, rather than suggested, we decline to find plain error under these circumstances." <u>Id.</u> at *6. This conclusion is in line with the analysis of other courts regarding the impact of <u>Jones</u> on 21 U.S.C. § 841. <u>See, e.g.</u>, <u>United States v. Williams</u>, 194 F.3d 100, 106-07 (D.C. Cir. 1999).

Aguayo-Delgado, unlike the appellant in <u>Grimaldo</u>, raised the drug-quantity issue in the District Court, based on the then-recent <u>Jones</u> decision. Thus, our review is not limited to plain error. Moreover, about three weeks after <u>Grimaldo</u>, and well after the instant case was briefed and argued, the Supreme Court decided <u>Apprendi v. New Jersey</u>, 530 U.S. ___, No. 99-478, 2000 WL 807189 (June 26, 2000). In <u>Apprendi</u>, the Supreme Court made it clear that the principle discussed in <u>Jones</u> is a rule of constitutional law. Thus, we are now squarely confronted with the impact of <u>Jones</u> and <u>Apprendi</u> on Aguayo-Deglado's conviction. While we are convinced that <u>Apprendi</u> requires that we abandon part of the analysis in <u>Wood</u>, we conclude that the District Court committed no error in this case.

A.

We begin by reviewing <u>Apprendi</u>. Charles Apprendi fired several shots from a rifle into the home of a neighbor. He was arrested and eventually pleaded guilty to three counts, the relevant count for our purposes being second-degree possession of a firearm for an unlawful purpose. Normally, under New Jersey law, that would carry

a penalty range of five to ten years' imprisonment. The sentencing judge, after a contested evidentiary hearing, found by a preponderance of the evidence that the crime was motivated by racial bias, applied a statute that increased the sentence for racially-motivated crimes, and therefore sentenced Apprendi to twelve years' imprisonment. The sentence was upheld by a divided New Jersey Supreme Court.

The United States Supreme Court granted certiorari and reversed, holding that the procedure used by the New Jersey courts was in violation of the Due Process Clause of the Fourteenth Amendment. After reviewing the historical importance of trial by jury and the requirement of proof beyond a reasonable doubt, the Court concluded that "[t]he historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone." Id. at *10. Where a "defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached." Id. From these principles the Court discerned a constitutional rule, first suggested in Jones, and now expressly articulated as a rule of constitutional law: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at *13.

The Court took care to clarify that McMillan v. Pennsylvania, 477 U.S. 79 (1986), remains good law, if limited in its application. McMillan upheld a statute that required the sentencing judge to impose a minimum sentence, within the statutory range applicable to the crime, if the judge found by a preponderance of the evidence that the

defendant visibly possessed a firearm during the commission of the offense. See id. at 81-93. As the Apprendi Court stated: "We do not overrule McMillan. We limit its holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict—a limitation identified in the McMillan opinion itself." Apprendi, 2000 WL 807189, at *12 n.13. The Court did express a willingness to reconsider McMillan in the future, see id., but of course we are bound by McMillan unless the Supreme Court actually does so.[4]

There is no doubt that after Apprendi the analysis of the federal drug sentencing system in Wood and its progeny no longer fully comports with the Supreme Court's jurisprudence concerning the requirement of proof beyond reasonable doubt and the scope of criminal defendants' jury trial right. Quite simply, we have held repeatedly that because the legislature defined drug quantity as a sentencing factor in 21 U.S.C. § 841(b), a judge could decide drug quantity using a preponderance of the evidence standard. See Wood, 834 F.2d at 1390; see also, e.g., United States v. Sales, 25 F.3d 709, 711 (8th Cir. 1994). We have maintained this holding regardless of the impact of the drug quantity on the applicable sentencing range.

---

[4]The Court in Apprendi also retained an exception for recidivism. In Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Court upheld a conviction and sentence where the sentence was increased from two years to twenty based on a prior conviction. The fact of prior conviction had not been charged in the indictment nor the issue submitted to the jury. The Court noted that recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." Id. at 243. In Apprendi, the Court left Almenarez-Torres untouched, although, as with McMillan, expressed a willingness to reconsider it. See Apprendi, 2000 WL 807189, at *13. Aguayo-Delgado does not raise any issue relating to the impact of his prior conviction on his conviction or sentence. The government provided notice, pursuant to 21 U.S.C. § 851 (1994), of its intent to seek an enhanced sentence based on Aguayo-Delgado's prior conviction.

After Apprendi, the issue is more complicated. A judge-found fact may permissibly alter a defendant's sentence within the range allowed by statute for the offense simpliciter. But when a statutory "sentencing factor" increases the maximum sentence beyond the sentencing range otherwise allowed given the jury's verdict, then the sentencing factor has become the "'tail which wags the dog of the substantive offense.'" Apprendi, 2000 WL 807189 at *15 (quoting McMillan, 477 U.S. at 88). A fact, other than prior conviction, that increases the maximum punishment for an offense is the "functional equivalent of an element of a greater offense than the one covered by the jury's verdict." Id. at *14 n.19. Thus, if the government wishes to seek penalties in excess of those applicable by virtue of the elements of the offense alone, then the government must charge the facts giving rise to the increased sentence in the indictment, and must prove those facts to the jury beyond a reasonable doubt. To allow otherwise would be "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." Id. at *17. To the extent that Wood and its progeny are inconsistent with that principle, Apprendi requires that we abandon them.

B.

We apply these principles to the case before us. Aguayo-Delgado was convicted by a jury for conspiring to distribute methamphetamine. As we have discussed, a statute defines the applicable statutory sentencing range, assuming a prior felony drug conviction but without reference to drug quantity, as up to thirty years' imprisonment. See 21 U.S.C. § 841(b)(1)(C). The permissible amount of supervised release for a class A felony (such as § 841(a)) is "not more than" five years, "[e]xcept as otherwise provided." 18 U.S.C. § 3583(b)(1) (1994). Here, however, the governing statute requires "at least" six years of supervised release, 21 U.S.C. § 841(b)(1)(C), which permits the imposition of any amount of supervised release between six years and life. See United States v. Eng, 14 F.3d 165, 172-73 (2d Cir.), cert. denied, 513 U.S. 807 (1994); see also United States v. Bongiorno, 139 F.3d 640, 641 (8th Cir.) (per curiam)

(citing this discussion in <u>Eng</u>), <u>cert. denied</u>, 525 U.S. 865 (1998). Aguayo-Delgado's sentence, 240 months imprisonment and ten years' supervised release, therefore is within the statutory range allowable for conspiracy to distribute methamphetamine regardless of drug quantity, considering his prior drug conviction.

Aguayo-Delgado's sentence was imposed, however, because of 21 U.S.C. § 841(b)(1)(A), which requires a factual finding of at least fifty grams of methamphetamine attributable to the defendant. As a result of the drug quantity, mandatory minimums apply, requiring at least twenty years' imprisonment and ten years' supervised release. Aguayo-Delgado argues that because drug quantity affected his sentence, the quantity was required to have been charged in the indictment and proven to the jury beyond a reasonable doubt.

This argument goes too far, and is not supported by the Supreme Court's opinion in <u>Apprendi</u>. The rule of <u>Apprendi</u> only applies where the non-jury factual determination increases the maximum sentence beyond the statutory range authorized by the jury's verdict. If the non-jury factual determination only narrows the sentencing judge's discretion within the range already authorized by the offense of conviction, such as with the mandatory minimums applied to Aguayo-Delgado, then the governing constitutional standard is provided by <u>McMillan</u>. As we have said, <u>McMillan</u> allows the legislature to raise the minimum penalty associated with a crime based on non-jury factual findings, as long as the penalty is within the range specified for the crime for which the defendant was convicted by the jury. <u>Apprendi</u> expressly states that <u>McMillan</u> is still good law, though limited in application, and <u>McMillan</u> controls that aspect of this case.

We conclude that the fact that 21 U.S.C. § 841(b)(1)(A) authorizes an increase in the applicable sentence based on drug quantity does not require reversal in this case. The District Court sentenced Aguayo-Delgado to the statutory minimums, both with respect to imprisonment and supervised release. Those minimums, because they are

within the statutory range authorized by § 841(b)(1)(C) without reference to drug quantity, are permissible under <u>Apprendi</u> and <u>McMillan</u> even where the drug quantity was not charged in the indictment or found by the jury to have been beyond a reasonable doubt. Moreover, because Aguayo-Delgado was sentenced at the absolute statutory minimums, it is clear that the increased maximum sentence afforded in § 841(b)(1)(A) played no role in Aguayo-Delgado's case.

## II.

Aguayo-Delgado also asserts that insufficient evidence supports his conviction. The evidence against Aguayo-Delgado at trial consisted mainly of the testimony of other participants in drug transactions. Aguayo-Delgado asserts that such testimony is unreliable and inconsistent, and that some corroborating evidence is necessary for his conviction to stand.

We review de novo the sufficiency of the evidence to sustain a conviction, viewing the evidence in the light most favorable to the government and resolving conflicts in the government's favor, and we accept all reasonable inferences that support the verdict. See <u>Grimaldo</u>, 2000 WL 709498, at *6. We uphold a conviction if it is supported by substantial evidence, that is, evidence sufficient to convince a reasonable jury of a defendant's guilt beyond a reasonable doubt, and we do not require that the evidence rule out all reasonable hypotheses of innocence. See <u>id.</u>

Aguayo-Delgado was convicted of conspiracy to distribute methamphetamine. The government was required to prove that a conspiracy existed, that Aguayo-Delgado knew of the conspiracy, and that he knowingly became a part of the conspiracy. See <u>id.</u> at *7. A conspiracy may be proven through circumstantial evidence. See <u>id.</u>

Roberto Martinez testified that he and Aguayo-Delgado repeatedly exchanged large amounts of cash and drugs. Martinez said that he acted as a driver for David

Caban, traveling from Des Moines to Sioux City to pick up methamphetamine from Aguayo-Delgado and that, on some occasions, Martinez bought drugs from Aguayo-Deglado for Martinez's independent distribution. This testimony, if believed, proves that Aguayo-Delgado and Martinez made an agreement to distribute methamphetamine. That agreement would be a conspiracy in violation of 21 U.S.C. § 846.

That testimony is certainly not the only evidence in the record that helps the case against Aguayo-Delgado. Nick Griffith testified that he traveled with Martinez on one drug-buying trip to Sioux City. Celso Lopez also testified that he drove from Des Moines to Sioux City to give Aguayo-Delgado cash and pick up methamphetamine for David Caban, including at least one trip with Martinez. Guy Wayne Newman testified that he too traveled to Sioux City to give cash to Aguayo-Delgado and bring methamphetamine back to Caban. Newman testified that Martinez brought Newman along so that he could test the quality of the methamphetamine before it was purchased. Jerry Galvan testified that he, Caban, and Martinez were partners, and that they distributed methamphetamine, including that purchased from Aguayo-Delgado. Galvan said that he, Aguayo-Delgado and Martinez discussed problems with the quality of Aguayo-Delgado's methamphetamine, and that Aguayo-Delgado agreed to increase the quality of future shipments. By videotaped deposition, David Caban testified that he bought methamphetamine from Aguayo-Delgado, both in person and through intermediaries, and that Caban distributed the drugs. Pamela Wight Gomez testified that she traveled with Aguayo-Delgado to California to pick up methamphetamine and bring it back to Des Moines.

There are certainly questions about the reliability and consistency of these accounts. The testimony against Aguayo-Delgado was from drug dealers and others involved in the drug trade. Each of the witnesses had some agreement with the government, which could show motive to lie. Moreover, the details of their accounts are inconsistent at times, to varying degrees of significance. These differences might only show poor memory or they might tend to show outright fabrication in some

instances. But these questions of reliability and consistency are within the province of the jury. See, e.g., United States v. McNeil, 184 F.3d 770, 778 (8th Cir. 1999). No rule of law requires extrinsic proof of conspiracy outside the testimony of other conspirators, even where, as is not uncommon, the witnesses are of questionable veracity. See, e.g., United States v. Guerrero-Cortez, 110 F.3d 647, 650 (8th Cir.), cert. denied, 522 U.S. 1017 (1997). The government was required only to prove that Aguayo-Delgado was part of an agreement to distribute methamphetamine, and, on this record, a reasonable jury could have been convinced of this beyond a reasonable doubt.

## III.

For the reasons stated, we affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.