# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3018

_____

United States of America,

      Appellee,

v.

Devon Julian Bradford,
also known as Devo,

      Appellant.

_____

No. 99-3019

_____

United States of America,

      Appellee,

v.

Dana E. Boswell,
also known as Blue,

      Appellant.

Appeals from the United States
District Court for the
District of South Dakota.

[PUBLISHED]

_____

No. 99-3020
_____

| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Howard L. Harrison, | * |
| also known as Big Bull, | * |
| also known as Bull | * |
| | * |
| Appellant. | * |

_____

No. 99-3021
_____

| United States of America, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * |
| | * |
| Phillip D. Banks, | * |
| also known as Debo, | * |
| also known as Philbo, | * |
| | * |
| Appellant. | * |

_____

No. 99-3975
_____

United States of America,    *
                             *
            Appellee,        *
                             *
        v.                   *
                             *
Joseph D. Andrews,           *
also known as Jo Jo,         *
                             *
            Appellant.       *

_____

Submitted: October 17, 2000

Filed:    April 13, 2001
_____

Before BEAM, HEANEY and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

PER CURIAM.


Devon J. Bradford, Dana E. Boswell, Howard L. Harrison, Phillip D. Banks, and Joseph D. Andrews, appeal their convictions and sentences that stem from a conspiracy to distribute crack cocaine in Sioux Falls, South Dakota. The defendants raise a number of issues in this consolidated appeal, including the sufficiency of the evidence; whether the sentencing comported with Apprendi v. New Jersey, 120 S. Ct. 2348 (2000); whether one, or more than one, conspiracy was proven; whether the motions to sever should have been granted; various evidentiary rulings; and other claims. We

affirm the convictions, but, in light of <u>Apprendi</u>, vacate and remand the cases of Andrews and Harrison for resentencing, and of Banks for reconsideration.

## I. BACKGROUND

In 1996 and 1997, the defendants and their associates moved from Compton, California to Sioux Falls. Testimony at trial established that the defendants began using the back room of C.J. Stockman's bar in Sioux Falls to distribute crack cocaine. At one point, Harrison, Banks, Boswell, and Bradford lived together in a house they rented using the proceeds from their drug dealing. The defendants and their associates would travel to California to obtain drugs, and would use Western Union to wire money to California.

Controlled buys of crack cocaine were made from Andrews, Bradford, and Banks, at C.J. Stockman's bar or their residences. Agents searching Andrews' apartment pursuant to federal warrants found crack cocaine, travel documents, car rental receipts, drug packaging materials, and telephone numbers for Boswell, Bradford, and a supplier in Compton, California. A search of Bradford's apartment revealed a quantity of crack cocaine and $3,800 in cash.

The indictment charged twelve individuals with conspiracy, money laundering, and drug trafficking. Eight defendants pleaded guilty prior to trial. On April 6, 1999, trial commenced for defendants Banks, Boswell, Bradford, and Harrison. The defendants were found guilty on all counts except counts 3 and 4, which charged Banks with distribution of cocaine base. Andrews remained a fugitive until a later arrest in California. His trial began on July 27, 1999, and he was found guilty of drug trafficking charges.

## II.  SUFFICIENCY OF THE EVIDENCE

Both Banks and Harrison argue that there was insufficient evidence to support their convictions.  In examining the sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict.  See United States v. Maggard, 156 F.3d 843, 846 (8th Cir. 1998); United States v. Erdman, 953 F.2d 387, 389 (8th Cir. 1992).  Having reviewed the evidence, we conclude that it is sufficient to uphold the convictions of Banks and Harrison.

A.     Banks' Convictions

The evidence established that Banks, along with the other defendants, followed Duane Adams from Compton to Sioux Falls.  Kimberly Van Noort testified that the group, including Banks, would gather at the house she shared with Adams once a week to meet and "hang out."  Another witness, Tara Clayton, testified that Banks once gave her a large rock of crack cocaine to "hold" for him.  Mark Washington, a confidential informant, made a controlled buy from Banks at the bar, as did another informant, Leonard Grajczyk.  Gary Allen also testified that he purchased crack cocaine from Banks.  At one time, Banks split the expenses associated with the house where many of the defendants lived.  Taken as a whole, there was sufficient evidence to show that there was a conspiracy, that Banks knew of the conspiracy, that he knowingly joined the conspiracy, and that he was involved in the distribution of crack cocaine.  Cf. United States v. Davidson, 195 F.3d 402, 406 (8th Cir. 1999), cert. denied, 120 S. Ct. 1218 (2000) (listing elements required to obtain conviction for conspiracy).

B.    Harrison's Convictions

Numerous witnesses testified that they saw Harrison at C.J. Stockman's bar selling crack cocaine.  Harrison arranged for two co-defendants, Corissa Murray and Jennifer Sarutzki, to rent the house where members of the conspiracy were to live.  In fact, several witnesses described Harrison as being the leader of the group; he was the "boss" and enforced the rules regarding whose turn it was to sell cocaine at the bar.  Harrison told Autrie Kimble, whom he had previously supplied with drugs, that only "Palmer Block" could sell from the bar.  Harrison, Bradford, and Boswell later told Kimble to slow down his drug sales because it was cutting into their business; Harrison did "most of the talking" at that confrontation.

In his appellate brief, Harrison disputes the credibility of the witnesses who testified at trial.  Determining the credibility of the witnesses, however, is a function of the jury.  See United States v. Harris, 193 F.3d 957, 958 (8th Cir. 1999).  There was ample evidence presented to sustain Harrison's conspiracy conviction.

As to his money laundering conviction under 18 U.S.C. § 1956(a)(1)(A)(i), Harrison argues that a wire transfer of $900 he received from Larry Williams in December 1997 had no relation to drug dealing or drug profits.  That argument is belied by the evidence.  Both Williams and Harrison were active participants in the drug conspiracy.  Further, the government presented evidence that neither Williams nor Harrison had any legitimate source of income.  "In proving that drug proceeds were used to promote illegal drug activity, the government need not trace the proceeds to a particular drug sale" and may instead rely on defendant's lack of any legitimate income source and involvement in drug trafficking to raise "the inference that the money wired . . . represented proceeds from drug distribution."  See United States v. Eastman, 149 F.3d 802, 804 (8th Cir. 1998) (quoting United States v. Blackman, 904 F.2d 1250, 1257 (8th Cir. 1990)).  Although Harrison argues that the wire transfer represented money for funeral expenses and not the proceeds of drug dealing, the only mention of

funeral expenses at trial was that a separate transfer occurred in November 1997, arranged by Andrews and Van Noort on Harrison's behalf.

## III.  SENTENCING AND APPRENDI

Defendants argue that they are entitled to resentencing under Apprendi, in that both the indictment and the jury's verdict failed to specify any drug quantities.[1]  In Apprendi, the Supreme Court held that any fact, other than a prior conviction, that "increases the penalty for a crime beyond the prescribed statutory maximum" must be included in the indictment and proven to the jury beyond a reasonable doubt.  120 S. Ct. at 2362-63.

This principle governs penalties for drug offenses listed in 21 U.S.C. § 841(a). United States v. Aguayo-Delgado, 220 F.3d 926, 930, 934 (8th Cir.), cert. denied, 121 S. Ct. 600 (2000).  If an indictment or jury verdict fails to specify the quantity of drugs involved, sentencing is limited by 21 U.S.C. § 841(b)(1)(C), which provides a statutory maximum penalty of twenty years or, if the defendant has a prior felony drug conviction, thirty years.  Id. at 930. Nevertheless, the sentence imposed in Aguayo-Delgado did not exceed the statutorily authorized range and, therefore, did not violate Apprendi.  Id.

In the present case, the indictments failed to specify any drug quantity, nor did the jury find the defendants responsible for any particular quantity.  Consequently, we must apply section 841(b)(1)(C) to determine whether any defendant's sentence

---

[1]Although the defendants have raised numerous other arguments regarding their sentences, we have considered those arguments and are satisfied such claims are without merit.  There was no clear error in the district court's factual findings. Maggard, 156 F.3d at 847.

exceeded the applicable statutory maximum.  Id.; United States v. Nicholson, 231 F.3d 445, 453 (8th Cir. 2000).

We easily dispense with the Apprendi  challenges of defendants Bradford and Boswell.  As both had prior felony drug convictions, their sentences of twenty-eight and thirty years, respectively, fall within the statutory maximum.  Therefore, neither sentence warrants redetermination.  Aguayo-Delgado, 220 F.3d at 934.

In contrast, the sentences imposed on defendants Harrison and Andrews exceeded the statutory maximum.  The district court imposed sentences of thirty-two years on Harrison and thirty-three years on Andrews.  The record is unclear as to whether either had a prior felony drug conviction, and at this stage we will presume they did not–a presumption that may be rectified on resentencing if incorrect.  Given the current state of the record, the statutory maximum for each sentence is twenty years.[2]  21 U.S.C. § 841(b)(1)(C); Nicholson, 231 F.3d at 453.

The government argues that the sentences of Harrison and Andrews are proper because they were, or could have been, imposed according to the "career offender" provision of the Sentencing Guidelines.  U.S. Sentencing Guidelines Manual [hereinafter U.S.S.G.] § 4B1.1 (2000).  However, career offender sentences depend not only on the defendants' criminal histories, but also on the calculation of drug quantities.  Compare id. (basing career offender offense level on comparison to relevant statutory maximum) with U.S.S.G. § 2D1.1(3) (establishing offense level based on drug quantity), 21 U.S.C. § 841(b)(1)(A) (setting statutory penalty when specific drug quantity involved), and 21 U.S.C. § 841(b)(1)(C) (setting statutory penalty when no drug quantity specified).  Since drug quantity determinations ultimately steer the career offender's sentence, we believe that the district court should initially analyze the

_____

[2]Even if we are incorrect in our presumption, the statutory maximum for each would be thirty years.

-8-

government's arguments on remand. United States v. Rogers, 228 F.3d 1318, 1329-30 (11th Cir. 2000) (reconciling application of statute and career offender guideline, and remanding for resentencing).

Even less clear is whether we must avert Apprendi violations by merely finding that the district court could have imposed consecutive, rather than concurrent, sentences to justify those actually imposed, or whether we may or should remand on that point. Compare United States v. Sturgis, 238 F.3d 956, 960-61 (8th Cir. 2001) (relying on plain error analysis in refusal to remand), with United States v. Apker, No. 99-3549, 2001 WL 194539, at *2 (8th Cir. Feb. 28, 2001) (remanding for resentencing when unclear what the actual punishment would have been under appropriate analysis), United States v. Butler, 238 F.3d 1001, 1005 (8th Cir. 2001) (finding plain error under Apprendi when defendant had not admitted to the essential element of quantity at trial and remanding for resentencing), United States v. Jones, 235 F.3d 1231, 1238 (10th Cir. 2000) (remanding for sentencing within the statutory range for multiple offenses of which defendant was convicted), and United States v. Joetzki, 952 F.2d 1090, 1098 (9th Cir. 1991) (remanding for resentencing on multiple counts when the district court had imposed a sentence exceeding that of the count carrying the highest statutory maximum and failed to clarify whether the sentences were to run consecutively or concurrently).

In calculating the appropriate sentence, a district court must reconcile various guidelines provisions. For instance, when sentencing on multiple counts, other than those for which a statute mandates a consecutive sentence, comparison between the "total punishment" calculation and the count bearing the highest statutory maximum governs whether sentences are to run consecutively or concurrently. "If the sentence imposed on the count carrying the highest statutory maximum is adequate to achieve the total punishment, then the sentences on all counts shall run concurrently, except to the extent otherwise required by law." U.S.S.G. § 5G1.2(c). In contrast:

If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

Id. at § 5G1.2(d). Hence, the statutory maximum for any one count does not necessarily cap the total punishment. United States v. Kroeger, 229 F.3d 700, 703 (8th Cir. 2000) (interpreting U.S.S.G. § 5G1.2 and its accompanying comment); United States v. Ervasti, 201 F.3d 1029, 1045-46 (8th Cir. 2000) (finding that the "'total punishment' is the precise sentence determined by the sentencing judge from within the appropriate guidelines range"). In addition, the sentencing court must wrestle with the guidelines' grouping provisions. U.S.S.G. §§ 3D1.1 et seq.

Still, the district court holds fairly broad discretion to impose either concurrent or consecutive sentences, see United States v. Goldman, 228 F.3d 942, 943 (8th Cir. 2000), and, under certain circumstances, may even depart from the applicable guidelines scheme.[3] In Jones, the Tenth Circuit rejected the government's argument

---

[3]The First Circuit has pointed out that:

[A] district court retains discretion under 18 U.S.C. § 3584(a) and the sentencing guidelines to order that sentences be served consecutively notwithstanding the dictates of U.S.S.G. § 5G1.2. This discretion, however, is not *sui generis*; it is simply another manifestation of the district courts' departure power. Because this is so, a district court can only impose consecutive sentences in derogation of U.S.S.G. § 5G1.2 if it follows the accepted protocol for guideline departures.

United States v. Quinones, 26 F.3d 213, 217 (1st Cir. 1994); cf. United States v. Edwards, 225 F.3d 991, 992 (8th Cir. 2000) (rejecting argument that court erred in denying a downward departure based on situation being anomalous when court was

that the district court had demonstrated its desire to impose a total sentence equal to the one actually imposed simply by virtue of having imposed it. 235 F.3d at 1238 (stating, "[w]e will not permit our result to be guided by idle speculation as to the sentence that might be imposed by the district court on remand.). Although we recognize that, given the appropriate record, we may often be able to recalculate the defendants' sentences ourselves, see Sturgis, 238 F.3d at 960, we deem it prudent to remand to give the district court the opportunity to determine the sentences of Harrison and Andrews according to the Sentencing Guidelines' rather idiosyncratic calculation scheme, see United States v. Peters, 215 F.3d 861, 863 (8th Cir. 2000) ("In a situation such as this, the district court should be given the first opportunity to use its discretion in applying the sentencing guidelines to the facts of the case.").

Finally, with regard to Banks, the district court found him responsible for only a portion of the drugs involved in the conspiracy, adopting the presentence recommendation of a lenient drug calculation, and sentenced him to twenty years' imprisonment–the mandatory minimum sentence under section 841(b)(1)(A) when a drug quantity has been ascertained and the defendant has previously been convicted for a felony drug offense. In its statement of reasons for sentencing, the court indicated it was "required by statute to impose a mandatory term." However, because no drug quantity was specified in the indictment or proven at trial, the only statutory provision that justifiedly applies to Banks is section 841(b)(1)(C). Under this provision, Banks' sentence might constitute the maximum allowable sentence, depending on the particular circumstances of his case. Although we recognize that Aguayo-Delgado, 220 F.3d at 933-34, permits us to affirm a sentence that falls within the statutorily authorized range,

_____

aware of its authority to do so but chose not to exercise its discretion). While we also note that departures for unusual cases are "'intended to be quite rare,'" United States v. Goff, 20 F.3d 918, 919 (8th Cir. 1994) (citation omitted), here, we have no occasion to decide whether Apprendi creates just such peculiarity or whether qualifying peculiarities otherwise exist in this situation, nor do we express any opinion as to whether departure is necessary or appropriate.

in light of the record, we vacate Banks' sentence and remand for reconsideration, cf. United States v. Orozco-Rodriguez, 220 F.3d 940, 942 (8th Cir. 2000) (indicating that a district court's awareness of its authority under the guidelines directs our review).

In sum, on the subject of sentencing in light of Apprendi, we affirm the sentences of Bradford and Boswell, vacate and remand those of Harrison and Andrews for resentencing, and that of Banks for reconsideration.

## IV. EXISTENCE OF MULTIPLE CONSPIRACIES

Defendants argue that the government proved multiple conspiracies rather than one conspiracy. When an indictment alleges a single conspiracy, but the government proves multiple conspiracies, reversal is required if the variance affects a defendant's substantial rights. See Kotteakos v. United States, 328 U.S. 750, 756-57 (1946).

From our review of the record, it is clear that co-defendants Andrews, Banks, Boswell, Bradford, and Harrison were all parts of a unitary conspiracy to distribute crack cocaine in Sioux Falls. The defendants shared a common purpose and, to achieve that purpose, used mutual dependence and assistance. See United States v. Massa, 740 F.2d 629, 636 (8th Cir. 1984) (quoting United States v. Zemek, 634 F.2d 1159, 1167 (9th Cir. 1980)).

That does not end the inquiry, however, because the defendants also argue that the government proved the existence of another drug conspiracy, involving a separate group, the Kimble conspiracy.[4]  The defendants argue that the evidence of the Kimble

_____

[4]The various defendants characterize the structure of this other conspiracy differently. From our reading of all of the defendants' briefs and our review of the testimony, the trial evidence showed the existence of one additional drug conspiracy headed by Autrie Kimble.

conspiracy prejudiced them because it had a "spillover" effect by inserting additional evidence of drug dealing into the trial. The government contends that it is irrelevant whether a witness at the trial was involved in another conspiracy, as long as the defendants themselves were all involved in the same conspiracy. This issue has not been precisely addressed by our precedent.

We are hesitant to say that the spillover of testimony about other conspiracies in which witnesses were involved could <u>never</u> constitute error. <u>See</u> <u>United States v. Rosnow</u>, 977 F.2d 399, 407-08 (8th Cir. 1992) (per curiam) (holding that evidence of multiple conspiracies among co-defendants at trial resulted in prejudice and mandated reversal of conspiracy conviction); <u>United States v. Rounsavall</u>, 115 F.3d 561, 564 (8th Cir. 1997) (discussing multiple conspiracy issue even though only one defendant was on trial). What is clear, however, is that in this case the co-defendants joined a unitary conspiracy to distribute crack cocaine and there was no appreciable prejudice from the evidence of the Kimble conspiracy. The evidence showed that at times the co-defendants supplied Kimble with drugs. At other times, the groups competed for the same business. The purpose of the testimony regarding the Kimble conspiracy was to show the connections between the co-defendants and how the co-defendants conspired together, either to supply drugs to the Kimble conspiracy or to stop their competition. That there was some overlap with, and some testimony about, Kimble's drug dealing does not mean that there was any prejudice to the defendants in this case. <u>Cf</u>. <u>United States v. Roach</u>, 164 F.3d 403, 412 (8th Cir. 1998) (stating that rival drug dealers may still be part of same overall conspiracy).

-13-

# V. MOTIONS TO SEVER

Banks, Bradford, and Boswell argue that it was an abuse of discretion for the district court to deny their motions to sever. As the defendants have failed to prove prejudice from the denial of their motions to sever, this claim must fail.

There is a preference for a joint trial when defendants are indicted together, because a joint trial promotes efficiency and eliminates the inequity of inconsistent verdicts. See Zafiro v. United States, 506 U.S. 534, 537 (1993). A district court's denial of a motion to sever "must be upheld absent a showing of clear prejudice that indicates an abuse of discretion." United States v. Horne, 4 F.3d 579, 590 (8th Cir. 1993); see also United States v. Rodgers, 18 F.3d 1425, 1431 (8th Cir. 1994) ("'Severance will be allowed upon a showing of real prejudice to an individual defendant. The motion to sever is addressed to the sound discretion of the district court[. ]'") (quoting United States v. Miller, 725 F.2d 462, 467 (8th Cir. 1984)).

Here, Banks, Bradford, and Boswell argue that they were prejudiced by a joint trial because the use of the various defendants' "street" nicknames confused the jury, and the evidence was too complicated for the jury to sort out against each defendant. During the trial, however, each defendant was identified by witnesses who knew them by their nicknames, real names, or both. Further, pictures of several defendants were taken into evidence. Although the case involved a substantial amount of evidence, it did not involve a particularly complicated conspiracy. Finally, Bradford and Boswell argue that they were prejudiced because at trial they sat next to Harrison, who had the word "Palmer," the name of a gang and a street in Compton, tattooed over one eyebrow. There is some dispute as to whether the jury even saw the tattoo. The tattoo however, would not have linked either Bradford or Boswell to the "Palmers."

## VI. EVIDENTIARY RULINGS

The defendants challenge several evidentiary rulings made during the course of the trial. After our review of the record, we conclude that none of these challenges reveal an abuse of discretion by the district court.

A.   Gang Evidence

Defendants Bradford and Boswell contend that it was error to admit testimony referring to the defendants' residence as the "Palmer House" because references to the Palmer Block Crips gang would be prejudicial. They also argue that certain witnesses' use of their "street" names constituted reversible error. We do not agree.

Prior to trial, defense counsel moved to exclude all gang evidence as more prejudicial than probative. The district court granted the motion in part, prohibiting the government from mentioning gang membership in its opening statement or closing argument. The order, however, did not impose a blanket prohibition on all gang evidence. The district court concluded that such evidence would only be admissible to clarify the connections between the defendants. The district court cautioned the government "to refrain from introducing evidence about gangs . . . not directly relevant" to whether a conspiracy existed, and indicated that it would consider specific evidence as it became relevant during the trial.

Bradford and Boswell argue that the government violated the court order during the trial. At several points, there was testimony that a certain house, where four of the defendants used to live, was called the "Palmer" house. Also, Autrie Kimble testified that Harrison told him that only members of the "Palmer Block" could sell at C.J. Stockman's bar. The defendants contend that other witnesses referred to them using "street" names.

-15-

After a careful examination of these references, we find no abuse of discretion in their admission. To be certain, there is great potential for prejudice when evidence regarding gangs is at issue. See United States v. Roark, 924 F.2d 1426, 1432-34 (8th Cir. 1991) (holding that generalized and repeated testimony regarding drug dealing activities of Hell's Angels motorcycle gang prejudiced defendant's trial). In this case, however, no general testimony was offered regarding the Palmer Block Crips or their activities. The "Palmer" remarks were admitted because they tended to show that these co-defendants conspired together. The district court did not err in admitting the evidence for this limited purpose. See United States v. Johnson, 28 F.3d 1487, 1497 (8th Cir. 1994) ("[s]pecific and circumscribed evidence of gang association may be necessary to show 'the nature and extent of [the defendant's] association'") (quoting United States v. Sparks, 949 F.2d 1023, 1026 (8th Cir. 1991)); United States v. Sills, 120 F.3d 917, 920 (8th Cir. 1997) (same). Further, the use of the defendants' "street" names (witnesses referred to Bradford as "Devo" and to Boswell as "Blue") did not prejudice them. The witnesses were describing the defendants as they knew them, and the names themselves did not carry any negative connotation. See United States v. Taylor, 554 F.2d 200, 203 (5th Cir. 1977) (holding that use of alias in indictment was permissible where there was testimony that defendant went by that name); United States v. Skolek, 474 F.2d 582, 586 (10th Cir. 1973) (per curiam) (same). The use of these nicknames merely assisted in the accurate identification of the defendants.

B.    Wire Transfers

Andrews contends that evidence of wire transfers was improperly allowed at his trial. First, Andrews argues that he had a Fourth Amendment right to privacy in the records of the Western Union transfers. This argument is foreclosed by our decisions in In re Grand Jury Proceedings, 827 F.2d 301, 303 (8th Cir. 1987), and Johnson, 28 F.3d at 1499. Andrews also argues that the Western Union records were inadmissible hearsay. We do not agree. The "send" portions that were filled in by Andrews constituted admissions of a party-opponent. See Johnson, 28 F.3d at 1498-99.

-16-

C.      Other Documents

Andrews argues that certain other "documents" were inadmissible as hearsay. We note that Andrews has failed to specify which documents he takes issue with; we assume, as the government does in its brief, that the documents at issue were slips of paper and address books with names and telephone numbers found at the residences of Andrews, Larry Williams, Duane Adams, Aletha Bray, Autrie Kimble, and Corissa Murray and Jennifer Sarutzki.

It does not appear that these names and telephone numbers were offered for the truth of the matter asserted; rather they were offered as additional evidence showing associations among the co-defendants. See United States v. Mazyak, 650 F.2d 788, 792 (5th Cir. 1981) (holding letter to defendants not hearsay because it was offered only to show connections between defendants and smuggling vessel). In addition, it seems that certain papers would be admissible as statements of co-conspirators, see Fed. R. Evid. 801(d)(2)(E), as the government had already introduced sufficient circumstantial evidence to document the existence of a conspiracy. See United States v. Helmel, 769 F.2d 1306, 1312-13 (8th Cir. 1985). There was no abuse of discretion in the admission of this evidence.

## VII.  OTHER CLAIMS

The defendants advance several arguments that have been foreclosed by circuit precedent. Boswell asserts that African-Americans were under-represented in the jury pool. As Boswell acknowledges, "[w]e have consistently upheld the use of voter registration lists to select jury pools." United States v. Sanchez, 156 F.3d 875, 879 (8th Cir. 1998). Because Boswell has made no showing of an impediment to the registration of minority voters, this claim must fail. See, e.g., Floyd v. Garrison, 996 F.2d 947, 949 (8th Cir. 1993); United States v. Clifford, 640 F.2d 150, 156 (8th Cir. 1981).

-17-

Bradford, Boswell, and Andrews assert that the district court erred in allowing the testimony of witnesses who had either entered plea agreements or received compensation for making controlled buys. Such an argument, however, is foreclosed by previous decisions. See United States v. Albanese, 195 F.3d 389, 394 (8th Cir. 1999); United States v. Fairchild, 189 F.3d 769, 777 (8th Cir. 1999); United States v. Johnson, 169 F.3d 1092, 1097-98 (8th Cir. 1999).

Andrews and Banks argue that the enhanced penalties for crack, as opposed to powder, cocaine result in a disparate impact on minorities and amount to cruel and unusual punishment. We have repeatedly rejected this argument. See, e.g., United States v. Bass, 121 F.3d 1218, 1222-23 (8th Cir. 1997); United States v. Carter, 91 F.3d 1196, 1198 (8th Cir. 1996) (per curiam). In the face of the precedent that has been established on these three issues, it would serve no useful purpose to revisit them at the present time.

## VIII. CONCLUSION

For the forgoing reasons, the judgments of conviction are affirmed. We vacate the sentences of Andrews, Harrison, and Banks, and remand for action consistent with this opinion, 21 U.S.C. § 841(b)(1)(C), and Apprendi.

HEANEY, Circuit Judge, concurring.

I concur in all aspects of the majority opinion, and Section III insofar as it relates to the sentencing of Bradford and Boswell.  I write separately to express that I only concur with respect to the sentencing of Harrison, Andrews, and Banks in Section III because our precedent requires me to do so.

My view is that Sturgis was incorrectly decided.  I believe that Apprendi made it quite clear  that the stacking argument should not be available, at least in those cases where the district court did not impose consecutive sentences originally.  In Apprendi, the State argued that although a twelve-year sentence had been imposed for an offense that carried a maximum sentence of ten years, the twelve-year sentence was permissible because the judge could have imposed consecutive sentences for two other counts.  The Supreme Court, however, stated that the additional counts were not relevant and could not ameliorate the constitutional problem.  See Apprendi v. New Jersey, 120 S. Ct. 2348, 2354 (2000).

I realize that the sentencing guidelines, particularly § 5G1.2(d), permit the use of consecutive sentences in order to achieve what it calls "the total punishment."  As I read Apprendi, however, a court of appeals on review cannot justify the sentence retroactively by stating that the district court should have stacked the sentences originally.  The problem is that the district court reached the original sentence based on a determination of the quantity of drugs involved when no quantity was charged in the indictment.  This is contrary to the spirit of Apprendi and contrary to the very specific views of some of the Supreme Court Justices.

Consecutive sentences in drug cases are extremely rare.  Moreover, U.S.S.G. § 5G1.2(d) was used only once in 2000.  We had 187 authored opinions with sentencing issues in the Eighth Circuit in 2000.  Of these authored opinions, only seven cases dealt with consecutive sentences.  Only one, United States v. Ervasti, 201 F.3d 1029 (8th

-19-

Cir. 2000), a tax evasion case, involved the application of U.S.S.G. § 5G1.2(d). There, the district court exercised its discretion to impose a consecutive sentence initially. Three of the other cases involved consecutive sentences for carry a weapon on conjunction with a drug offense. See United States v. Bailey, 235 F.3d 1069 (8th Cir. 2000); United States v. Edwards, 225 F.3d 991 (8th Cir. 2000); and United States v. Goldman, 228 F.3d 942 (8th Cir. 2000). The remaining three cases all involved nondrug offenses where the district courts originally used their discretion to impose consecutive sentences. See United States v. Amsden, 213 F.3d 1014, 1016 (8th Cir. 2000) (remanding for resentencing in mail threats case where district court had imposed consecutive sentences for extreme conduct under U.S.S.G. § 5K2.8; United States v. Waugh, 207 F.3d 1098, 1102 (8th Cir. 2000) (holding in assault and involuntary manslaughter case that district court has discretion to impose concurrent or consecutive sentences based on finding of whether multiple counts involved the same harm); United States v. Lewis, 200 F.3d 1177 (8th Cir. 2000) (holding that district court should have grouped counts of harboring illegal alien as involving substantially the same harm).

In my view, when the district court has imposed a sentence that exceeds the statutory maximum because no drug quantities were stated in the indictment, this court should not affirm the sentence on the theory that the district court could have given consecutive sentences. This practice will encourage some prosecutors to continue their current practice of refusing to charge a defendant with the quantity of drugs they seek to hold a defendant responsible for, particularly when the prosecutor is seeking a sentence in excess of the twenty-year maximum provided by § 841(b)(1)(C). Other prosecutors, including some in our circuit, have had a practice of charging drug amounts in the indictments, and there is no good reason why we should not expect all prosecutors to do the same.

There is one additional reason for my view and that is that the statistics indicate that 95% of defendants plead guilty. There is absolutely no reason why defendants who agree to plead guilty should not know at the time they plead what the

-20-

government's intentions are with respect to the amount of drugs. The probation officer who prepares the presentence report receives all the information he or she has from the records of the prosecutor and law enforcement officials, whether it be a police department, the FBI, or the DEA.

For the foregoing reasons, I respectfully concur.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.