# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1792

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Danny Lee Beatty, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  November 17, 1998
Filed:   March 4, 1999

_____

Before McMILLIAN, FLOYD R. GIBSON, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

Danny Lee Beatty appeals from a final judgment entered by the district court[1] following his conditional pleas of guilty to one count of drug trafficking, and one count of knowingly carrying a firearm during a drug trafficking crime.  We affirm.

I.

_____

[1] The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

The facts are largely uncontroverted. Beatty disputes the legal ramifications arising from the facts.

While patrolling Hot Springs Village, Arkansas, during the late evening of March 6, 1997, Deputy Gary Coop[2] observed a pickup truck without a working license plate illumination light as required by Arkansas law. See Ark. Code Ann. § 27-36-215(c) (Michie 1994). Deputy Coop turned and followed the truck, and after observing it cross the center line, he activated his patrol car's emergency lights and stopped the pickup. Two persons were riding in the truck—a driver, later identified to be Danny Lee Beatty, and a minor female passenger.

Deputy Coop requested Beatty's driver's license and asked both Beatty and the minor female to exit the vehicle while he ran a license check on Beatty. Deputy Coop asked Beatty if he carried insurance on the vehicle, and Beatty responded that he did not. See id. § 27-22-104 (making it unlawful to operate an uninsured motor vehicle in Arkansas). Shortly thereafter, backup officers arrived at the scene. At about this time, Deputy Coop asked Beatty for permission to look inside the truck. Beatty consented. Deputy Coop approached the truck and noticed that it did not have an inspection sticker as required by state law. See id. § 27-32-112(d). Without physically extending himself or his flashlight into the truck's interior, Deputy Coop shined his flashlight through the open driver's side window and noticed, in plain view, a leather strap protruding from a briefcase positioned adjacent to the driver's seat. Deputy Coop recognized this strap as being part of a shoulder holster for a handgun. He then opened the truck door and removed the holster which held a .45 caliber handgun with a fully loaded clip. He also discovered bags of amphetamine inside the brief case. A subsequent gun check indicated that the gun had been stolen.

---

[2] In his brief, Beatty refers to a "Deputy Cooper." The government's brief, the Magistrate Judge's Report and Recommendation (Rec. at 3-11), and the transcript of the suppression hearing (Appellant's App.), all refer to "Deputy Coop."

After discovering the drugs, Deputy Coop alerted the Drug Task Force. An inventory search of the vehicle resulted in the seizure of marijuana, jewelry, $2,740 in cash, and syringes, one of which appeared to be filled with a controlled substance.

A federal grand jury charged Beatty with (1) knowingly possessing with the intent to distribute amphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841 (a)(1); (2) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (3) knowingly carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924 (c)(1). Beatty originally pleaded not guilty to each count and filed a motion to suppress all items seized from him and the truck at the time of the stop. The magistrate judge recommended denial of Beatty's motion. According to the magistrate judge, the plain view doctrine justified Deputy Coop's discovery of the holster strap, and after observing the holster strap, Deputy Coop was justified in conducting a limited protective sweep of the vehicle. The district court adopted the magistrate judge's recommendation in toto. After the district court denied his motion to suppress, Beatty entered conditional guilty pleas to the first and third counts of the indictment, reserving his right to appeal the denial of his suppression motion. In exchange, the government agreed to dismiss the felon in possession charge. The district court sentenced Beatty to a total term of 72 months and one day of imprisonment, three years of supervised release, a $3,000 fine, and a $200 special assessment. On appeal, Beatty challenges the constitutionality of the search and seizure.

## II.

"We review the facts supporting the district court's denial of the motion to suppress for clear error and review de novo the legal conclusions based on those facts." United States v. Glenn, 152 F.3d 1047, 1048 (8th Cir. 1998).

3

Beatty contends that the evidence seized after the traffic stop should have been suppressed as the fruit of the poisonous tree. Beatty claims that Deputy Coop impermissibly "escalated the traffic stop into an investigative stop without the requisite leve[l] of reasonable suspicion." (Appellant's Br. at 10.) While Beatty admits that he consented to Deputy Coop's request to look inside the truck, he now asserts that his consent "was not sufficiently voluntary to purge the taint of the unconstitutional Terry stop." (Id. at 11.) We find no Fourth Amendment violation.

We first take issue with Beatty's foundational premise. Beatty argues that at the time Deputy Coop requested permission to look inside the truck, the Deputy's conduct somehow had transformed an admittedly valid traffic stop into an unconstitutional seizure. We disagree. It is undisputed that probable cause supported Deputy Coop's decision to pull over the truck, and that Deputy Coop committed no constitutional violation when he requested Beatty and the minor female to exit the vehicle. See United States v. Coleman, 148 F.3d 897, 904 (8th Cir.) (holding that traffic violations provide probable cause for stopping a car and ordering the driver and passenger out of the car), cert. denied, 119 S. Ct. 228 (1998). See also Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977) (holding that a police officer may order the driver out of a lawfully stopped vehicle as a matter of course); Maryland v. Wilson, 519 U.S. 408, 410 (1997) (extending the Mimms per se rule to passengers). Beatty also concedes that Deputy Coop's subjective intent is irrelevant in view of the probable cause for the traffic stop. See Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."). Deputy Coop did not transgress any Fourth Amendment protections when he asked for Beatty's driver's license or when he asked whether Beatty carried insurance on the truck. See United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994) (stating that a law enforcement officer could ask "any questions reasonably related to the stop"), cert. denied, 514 U.S. 1134 (1995). See also Ark. Code Ann. § 27-22-104 (making it unlawful to operate an uninsured vehicle within the state). Finally, Beatty admits that at the time Deputy Coop requested permission

4

to look inside the truck, the Deputy "had not completed his business from the initial traffic stop." (Appellant's Br. at 11.)  In other words, there had been no unreasonable detention at the time Beatty consented to the search of his truck.  Therefore, "[b]ecause the stop and detention were lawful, [Beatty's] argument that the search was a product of an illegal stop and detention is without merit."  United States v. Lyton, 161 F.3d 1168, 1171 (8th Cir. 1998).

Even were we to assume that Deputy Coop's conduct somehow resulted in an improper detention for Fourth Amendment purposes, "any evidence discovered in [the truck] thereafter is nevertheless admissible if [Beatty's] consent to the search was sufficiently an act of free will to purge the primary taint."  United States v. Palacios-Suarez, 149 F.3d 770, 772 (8th Cir. 1998) (quotations and citations omitted).  In determining whether Beatty's consent was voluntary, "we examine the totality of circumstances under which it was given."  Id.  See also United States v. Chaidez, 906 F.2d 377, 381-82 (8th Cir. 1990) (identifying factors relevant to the voluntariness of a defendant's consent to search).

On the record before us, we conclude that Beatty's consent was voluntary.  At the time Deputy Coop requested permission to look inside the truck, Beatty had been detained for only a short period of time.  There is no contention that Deputy Coop, or any other police officer, threatened or intimidated Beatty.  The entire affair occurred on a public street and Beatty stood by idly while Deputy Coop searched his truck.  Finally, the fact that Deputy Coop did not inform Beatty that he could deny his search request is irrelevant.  See Schneckloth v. Bustamonte, 412 U.S. 218, 231 (1973) (noting that police need not inform a defendant that he has a right to refuse consent to a search request).  Accordingly, we hold that Beatty's consent sufficiently purged any taint that might have resulted from an allegedly illegal detention.

Moreover, even if Beatty had not consented, Deputy Coop's conduct in this case did not amount to a Fourth Amendment violation.  Under the plain view

doctrine, a police officer's warrantless seizure does not violate the Fourth Amendment if the officer's conduct satisfies three criteria. United States v. Hatten, 68 F.3d 257, 260 (8th Cir. 1995), cert. denied, 516 U.S. 1150 (1996). First, the officer must not violate the Fourth Amendment in arriving at the vantage point from which he plainly views the evidence. Id. Second, the object's incriminating nature must be immediately apparent to the officer. Id. Third, the officer must have a legal right of access to the object. Id. We find each of these criteria satisfied in this case.

Beatty argues that after he and his passenger exited the truck, Deputy Coop was not justified in reapproaching the vehicle and looking inside. According to Beatty, Deputy Coop's return to the side of the vehicle was improper because it was not supported by a reasonable, articulable suspicion. We reject this argument. In order to look inside the truck, Deputy Coop did not need "probable cause, or even reasonable suspicion that crime [was] afoot." Id. At the time Deputy Coop observed the holster strap in the car, all that was required was that he "'had a right to be in close proximity to the [truck] at a point from which the observation occurred.'" Id. (quoting United States v. Webb, 533 F.2d 391, 394 (8th Cir. 1976)). When Deputy Coop looked inside Beatty's truck, he had already lawfully stopped the vehicle on a public road. He did not physically place himself or his flashlight inside the truck's cab. Thus, when Deputy Coop first observed the holster strap, he did so from a perfectly legal and legitimate vantage point. See id. at 261 (finding no reasonable expectation of privacy in the visible interior of a car, even when illuminated by a flashlight).

As to the incriminating nature of the holster strap, Deputy Coop had approximately 12 years of law enforcement experience at the time of the stop, and he testified that when he saw the strap protruding from the briefcase, he recognized it as being part of a gun holster. "Hidden guns, even badly hidden guns, are by their nature incriminating." Id. (citing United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir. 1991)). Moreover, in Arkansas, carrying a handgun in a vehicle can be illegal. See Ark. Code Ann. § 5-73-120 (Michie 1993). Thus, the gun's incriminating nature

was immediately apparent, and Deputy Coop had at least a reasonable suspicion to believe it was contraband. Once Deputy Coop observed the holster, he was justified in entering the truck and performing a limited sweep. Coleman, 148 F.3d at 904. Thus, the gun and the drugs found in the truck were validly seized. Id.

Finally, we have also considered the applicability of recent Supreme Court precedent. See Knowles v. Iowa, 119 S. Ct. 484 (1998). In Knowles, the Court overturned an Iowa law that allowed police officers to conduct a "search incident to citation." Id. at 488. In this case, Deputy Coop had consent to search Beatty's truck. Thus, Knowles is inapposite.

### III.

For the reasons identified above, we affirm the district court's judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT