# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2584

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Western District of Arkansas |
| | * | |
| Reginald Kennard Sturgis, | * | [TO BE PUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: January 10, 2001

Filed: February 6, 2001

_____

Before LOKEN and BYE, Circuit Judges, and SACHS,[1] District Judge.

_____

BYE, Circuit Judge.

A jury convicted Reginald Sturgis of possessing crack cocaine and marijuana with intent to distribute. Sturgis now appeals several aspects of his conviction and sentence. We affirm the judgment and sentence of the district court.[2]

_____

[1]The Honorable Howard F. Sachs, Senior United States District Judge for the Western District of Missouri, sitting by designation.

[2]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

I

A reliable confidential informant told federal drug enforcement agents that Sturgis was selling crack cocaine and marijuana out of a safe in a motel room in Fort Smith, Arkansas. The informant confirmed that he had been present in the motel room earlier that day. Special Agents Chuck Kelly and Kerry Keeter visited the motel and knocked on the motel room door. Stewart Andrews answered the door. Andrews stepped outside the room while the agents identified themselves and announced the purpose of their visit. A few seconds later, two other men — Sturgis and Charles Coleman — came out of the room and stood next to Andrews. Andrews acknowledged that the room was rented in his name.

The agents asked Andrews for permission to search the room, which he granted. Andrews quickly admitted that a McDonalds cup located on the dresser contained a small amount of marijuana. The agents entered the room, seized the McDonalds cup, and conducted a cursory search. Agent Kelly phoned local police and requested a canine unit. The agents and the three suspects then waited for the canine unit to arrive.

When the canine unit arrived, the dog immediately alerted to the locked safe in the room. Agents asked the men about the contents of the safe. Sturgis denied knowing anything about its contents, since he wasn't staying there. Andrews told the agents that there were no drugs in the safe; he told the agents that they could search the safe, but that he didn't have a key to open it. One agent asked Sturgis whether he had the key. Sturgis said no, but the agent asked permission to pat him down anyway. Sturgis agreed, and during the pat-down search, the agent felt a large bulge in Sturgis's sock. The agent asked Sturgis about the bulge. Sturgis responded by removing a bundle of currency ($1400) from the sock.

Motel management eventually confirmed that the key to the safe was present in the motel room when Andrews checked in. Because the agents couldn't locate the key,

they ordered management to open the safe. A manager then opened the safe, which contained two ounces of crack, 1½ pounds of marijuana, scales, and plastic baggies. The entire investigation at the motel room lasted roughly two hours.

Sturgis and Andrews were indicted on charges of possessing crack cocaine and marijuana with intent to distribute, both violations of 21 U.S.C. § 841. Both men moved to suppress the drug evidence on Fourth Amendment grounds. A magistrate judge held an evidentiary hearing and took extensive testimony from the defendants, the federal agents, and local police officers. Following the hearing, the judge recommended to the district court that the suppression motions be denied. The district court approved that recommendation on January 20, 2000.

Sturgis proceeded to trial. Following a two-day trial, a jury convicted Sturgis on both counts. The district court sentenced Sturgis to 262 months in prison on the crack distribution charge (the low end of the Guidelines range), and 60 months in prison on the marijuana distribution charge. The sentences ran concurrently.

## II

Sturgis raises three issues on appeal. He contends that the drug evidence was uncovered during a search which violated the Fourth Amendment. Sturgis also contends that the court improperly determined that he possessed crack cocaine, when in fact he possessed powder cocaine. Finally, Sturgis argues that his sentence violates the rule announced in Apprendi v. New Jersey, 120 S. Ct. 2348 (2000).

## A

In considering a district court's denial of a motion to suppress evidence, we review the court's findings of fact for clear error, and the court's legal conclusions de novo. United States v. Beatty, 170 F.3d 811, 813 (8th Cir. 1999) (quoting United

-3-

States v. Glenn, 152 F.3d 1047, 1048 (8th Cir. 1998)). Sturgis actually raises three separate Fourth Amendment arguments. He argues that the warrantless search of the motel room violated his Fourth Amendment rights. He also argues that the search of his person (which revealed the currency) violated the Fourth Amendment. Finally, he claims that he was improperly seized during the three-hour investigation at the motel.

1

The district court concluded that Sturgis lacked "standing" to contest the search of the motel room, since the room was rented to Andrews. We disagree with the court's terminology, but not its holding.

Two Terms ago, the Supreme Court reaffirmed its earlier rejection of "standing" nomenclature. Minnesota v. Carter, 525 U.S. 83, 87-88 (1998). Beginning in Rakas v. Illinois, 439 U.S. 128, 139-140 (1978), and continuing in Carter, the Court replaced the standing inquiry with a new vocabulary tailored to the principles that undergird the Fourth Amendment. See Carter, 523 U.S. at 88. In Carter, the Court declared that "a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . ." Id. Applying this mode of analysis to the facts at hand, the Court held that defendants visiting another's apartment for a short time to package cocaine had no legitimate expectation of privacy in that apartment, so that the Fourth Amendment provided defendants no protection. Id. at 90-91.

Two principles animated the Court's holding in Carter. First, the Court suggested that a visitor usually lacks a rightful expectation of privacy when present in the home of another — unless the visitor stays overnight. Id. at 89-91 (citing Minnesota v. Olson, 495 U.S. 91, 98-99 (1990)). Second, the Court indicated that a visitor to another's home for commercial purposes retains only a limited privacy interest, because "[a]n expectation of privacy in commercial premises . . . is different

from, and indeed less than, a similar expectation in an individual's home." Id. at 90 (quoting New York v. Burger, 482 U.S. 691, 700 (1987)). Because the Carter defendants had visited a confederate's apartment to bag cocaine, the Court held that they lacked a sufficient privacy interest to trigger Fourth Amendment scrutiny.

The facts in Sturgis's case are quite similar to those in Carter. Sturgis, by his own account, did not rent the motel room; Andrews did. Sturgis actually told the federal agents that he was merely visiting Andrews at the motel. Moreover, the evidence adduced at trial, and believed by the jury, strongly suggests that Sturgis's purpose in the room was purely commercial — distributing controlled substances. Under Carter, Sturgis plainly lacked a reasonable expectation of privacy in Andrews's room. The district court properly denied Sturgis's suppression motion as to the search of Andrews's motel room. See United States v. Carter, 854 F.2d 1102, 1105-1106 (8th Cir. 1988) (holding that a defendant lacked a legitimate expectation of privacy in the motel room of another).

2

As for the pat-down search, the district court found that Sturgis consented to the agent's search of his person. Sturgis's consent obviated the need for a warrant prior to the search. Beatty, 170 F.3d at 813-14. Sturgis objects on appeal that he did not consent. We note that after observing Sturgis's testimony at the suppression hearing, the district court found that Sturgis lacked credibility on this point. Given the court's opportunity to observe Sturgis and the other witnesses, as well as the other evidence in the record, we cannot say that the district court clearly erred in finding that Sturgis consented.

We also find no support for the idea that Sturgis's consent resulted from a coercive environment. At the time of the pat-down, Sturgis had been detained for only a short period of time, neither agent had threatened or intimidated Sturgis, and the

encounter occurred outside a motel room overlooking a public street. See id. at 814 (explaining that these factors purge a search of possible taint).

3

Lastly, Sturgis argues that federal agents improperly detained him for approximately two hours while waiting for a canine unit at the motel. He contends that a detention of that duration was unreasonable. We disagree.

Assuming that Sturgis was in fact seized, his seizure wasn't illegal because agents had probable cause to arrest him while the group waited for the drug dog.[3] The agents were alerted to the motel room by the report of a known informant who had, on four prior occasions, offered accurate information leading to arrests. The informant told agents that he had visited the motel room earlier that day and had seen Sturgis dealing crack and marijuana stored in a safe. When agents arrived on the scene, Andrews told them about a quantity of marijuana in a cup on the dresser. Agents also personally observed Sturgis and the room safe. In view of all these circumstances, it is apparent that federal agents had probable cause to seize Sturgis. See United States v. Sherrill, 27 F.3d 344, 346-47 (8th Cir. 1994); cf. Illinois v. Gates, 462 U.S. 213, 230-38 (1983) (requiring a "totality of the circumstances" review). It is immaterial that the agents didn't formally arrest Sturgis while they waited for the canine unit.

Because the agents could have arrested Sturgis, they didn't violate the Constitution by detaining Sturgis for two hours while awaiting the arrival of the canine unit. Cf. United States v. Hunnicutt, 135 F.3d 1345, 1350 (10th Cir. 1998)

---

[3]We may recognize the existence of probable cause on appeal, though the district court did not analyze the situation in similar fashion. United States v. Abadia, 949 F.2d 956, 958 n.12 (8th Cir. 1991).

("[D]etention of the driver at the scene to accomplish a canine sniff is generally reasonable where the driver is already under lawful arrest.") (citing United States v. Fiala, 929 F.2d 285, 288 (7th Cir. 1991) (holding that a 1½ hour wait for a canine unit was reasonable because the defendant was already under lawful arrest)).[4]

In sum, we conclude that the district court properly denied Sturgis's suppression motion.

B

The district court found that Sturgis possessed crack cocaine. But Sturgis argues that he actually possessed powder cocaine. At trial, the government introduced expert testimony from a forensic chemist who testified that the substance in the motel safe was crack, not powder, cocaine. The chemist's testimony provided ample support for the district court to sentence Sturgis as a crack possessor, rather than a powder cocaine possessor. See United States v. Wilson, 103 F.3d 1402, 1407 (8th Cir. 1997). Thus the court did not clearly err in sentencing Sturgis as a crack cocaine offender. Cf. United States v. Moore, 212 F.3d 441, 445-46 (8th Cir. 2000) (standard of review).

Sturgis's other argument — that the sentencing disparity between crack offenses and powder cocaine offenses violates the federal constitution — has long since been rejected in our circuit. See United States v. Nicholson, 231 F.3d 445, 456 (8th Cir. 2000) (citing United States v. Buckner, 894 F.2d 975, 978-81 (8th Cir. 1990)).

---

[4]Sturgis's citation to United States v. Bloomfield, 40 F.3d 910, 917 (8th Cir. 1994) (en banc), is inapposite because officers in that case possessed only reasonable suspicion, not probable cause.

C

Finally, we reach Sturgis's Apprendi argument. In Apprendi, the Supreme Court held that a criminal defendant is deprived of due process when judge-found facts trigger a sentence that exceeds the statutory maximum sentence for the offense simplicter. Apprendi, 120 S. Ct. at 2362-63. We recognized, in United States v. Aguayo-Delgado, that judges may continue to determine the drug quantity attributable to a defendant at sentencing, so long as the defendant's ultimate penalty doesn't exceed the statutory maximum sentence for an indeterminate amount of that drug. 220 F.3d 926, 933-34 (8th Cir.), cert. denied, 121 S. Ct. 600 (2000). We review Sturgis's sentence for plain error because he didn't challenge his sentence under Apprendi in the district court. See United States v. Poulack, ___ F.3d ___, 2001 WL 15734, at *4 (8th Cir. Jan. 9, 2001).

The district court sentenced Sturgis to 60 months for the marijuana distribution charge and 262 months for the crack distribution charge. Applying the Sentencing Guidelines, the court ran the sentences concurrently, so that Sturgis received 262 months in prison. The statutory maximum sentence for possessing less than 50 grams (e.g., an indeterminate quantity) of marijuana is 60 months. Poulack, 2001 WL 15734, at *3. The statutory maximum sentence for an indeterminate quantity of crack is 240 months. Aguayo-Delgado, 220 F.3d at 933-34.

Sturgis's 60-month sentence on the marijuana count doesn't violate Apprendi's rule because the statutory maximum sentence is 60 months. But Sturgis's 262-month sentence on the crack count was erroneous because that sentence exceeds the 240-month statutory maximum for an indeterminate quantity of crack. Notwithstanding the Apprendi error, however, Sturgis hasn't been prejudiced, and therefore we find no plain error. See United States v. Olano, 507 U.S. 725, 734 (1993) (holding that, in most cases, an error must be prejudicial to satisfy the stringent plain error standard).

-8-

The Guidelines require a district court to run sentences from multiple counts consecutively, rather than concurrently, if the Guideline sentence exceeds the statutory maximum sentence for each count. U.S.S.G. § 5G1.2(d). In this instance, Sturgis's 262-month sentence exceeded the statutory maxima for both the crack and marijuana distribution counts. Applying § 5G1.2(d), the district court could have capped Sturgis's 262-month sentence on the crack count at the maximum 240 months, and run 22 of the 60 months on the marijuana count consecutively, thereby achieving the 262-month sentence imposed by the Guidelines. See, e.g., United States v. Henderson, 105 F. Supp. 2d 523, 536-37 (S.D.W.V. 2000) (running a portion of one count consecutive to other counts, under § 5G1.2(d), to reach the Guideline sentence while avoiding an Apprendi error). So constituted, Sturgis's sentence wouldn't violate Apprendi because neither count's sentence would exceed the statutory maximum sentence for the respective drug types. Because Sturgis's sentence could be reformed to avoid an Apprendi error, we perceive no plain error in his sentence. See, e.g., United States v. Page, 232 F.3d 536, 544-45 (6th Cir. 2000) (finding an absence of prejudice, on plain error review, when § 5G1.2(d) would render defendants' sentences identical after remand to correct an Apprendi error), petition for cert. filed, No. 00-7751 (Jan. 3. 2001); United States v. Williams, No. 00-4290, 2000 WL 1699841, at *1 (4th Cir. Nov. 14, 2000) (same).

III

We affirm the judgment and sentence of the district court in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.