[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 13, 2001
THOMAS K. KAHN
CLERK

_____

No. 97-5293
_____

D.C. Docket No. 96-00075-CR-SH


UNITED STATES OF AMERICA,

                                        Plaintiff-

Appellee,

        versus

FELIX GALLEGO, a.k.a. Ica,
EVELIO RIZO SR., LAZARO GALLEGO JR.,
a.k.a. Gamba, ABEL RIZO,

                                Defendants-Appellants.


_____

Appeals from the United States District Court for the
Southern District of Florida
_____

**(April 13, 2001)**


Before TJOFLAT, HILL and POLITZ*, Circuit Judges.


_____
*Honorable Henry A. Politz, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

TJOFLAT, Circuit Judge:

This case is an appeal by members of a drug conspiracy. Although the appellants raise a host of issues on appeal,[1] the only claim that merits discussion are that their sentences violate Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 143 L. Ed. 2d 311 (2000). We affirm the convictions and sentences.

I.

Four appellants are before us in the instant appeal: Felix Gallego ("Felix"), Lazaro Gallego Jr. ("Lazaro"), Abel Rizo ("Abel"), and Evelio Rizo Sr. ("Rizo Sr.").[2] The appellants were indicted by a Southern District of Florida grand jury on October 9, 1996, on charges of conspiracy, possession of cocaine, robbery, and firearms violations.[3] The indictment was sealed by order of the court.

---

[1] We grant Evelio Rizo Sr.'s Motion to Adopt Issues of Co-Appellants, filed August 16, 1999.

[2] Felix and Lazaro are brothers. Abel is the son of Rizo Sr.

[3] The October 9 indictment was a second superseding indictment. The first indictment was handed down on January 24, 1996, and a superseding indictment followed on May 31, 1996. None of the appellants was charged in the first indictment, and, of the appellants, only Abel and Rizo Sr. were charged in the first superseding indictment. We refer to the second superseding indictment throughout simply as "the indictment." This second superseding indictment charged fifteen individuals in seventeen counts. It charged the appellants as follows:

Count One – Conspiracy to possess cocaine, with intent to distribute, from June 25, 1987 to March 1995, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, all in violation of 21 U.S.C. § 846 (Abel, Felix, Lazaro, and Rizo Sr.);

Count Two – Possession of cocaine, with intent to distribute, on June 29, 1992, in

The appellants were allegedly members of a group, comprised of more than fifteen individuals, that carried out home invasions and robberies to obtain money, drugs, and other valuable items from persons believed to be drug traffickers. Such robberies are generally known as "rip-offs." The usual <u>modus operandi</u> was for a member of the group (the "santo") to obtain information about other individuals who sold narcotics. (The santo would receive a larger portion of the robbery

> violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Abel);
>
> Count Three – Obstruction or delay of commerce by robbery ("Hobbs Act robbery") on June 29, 1992, in violation of 18 U.S.C. §§ 1951(a) and 2 (Abel);
>
> Count Four – Using and carrying a firearm during the commission of a crime of violence and drug trafficking crime on June 29, 1992, in violation of 18 U.S.C. §§ 924(c) and 2 (Abel);
>
> Count Five – Attempted Hobbs Act robbery on February 20, 1993, in violation of 18 U.S.C. §§ 1951(a) and 2 (Felix and Rizo Sr.);
>
> Count Six – Using and carrying a firearm during the commission of a crime of violence and drug trafficking crime on February 20, 1993, in violation of 18 U.S.C. §§ 924(c) and 2 (Felix and Rizo Sr.);
>
> Count Seven – Hobbs Act robbery in late 1992 or early 1993, in violation of 18 U.S.C. §§ 1951(a) and 2 (Lazaro);
>
> Count Eight – Attempted Hobbs Act robbery on April 30, 1993, in violation of 18 U.S.C. §§ 1951(a) and 2 (Abel, Felix, Lazaro, and Rizo Sr.);
>
> Count Nine – Attempted Hobbs Act robbery on November 24, 1993, in violation of 18 U.S.C. §§ 1951(a) and 2 (Abel and Rizo Sr.);
>
> Count Ten – Using and carrying a firearm during the commission of a crime of violence and drug trafficking crime on November 24, 1993, in violation of 18 U.S.C. §§ 924(c) and 2 (Abel and Rizo Sr.);
>
> Count Eleven – Possession of cocaine, with intent to distribute, in March 1994, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Rizo Sr.);
>
> Count Fourteen – Hobbs Act robbery on November 9, 1994, in violation of 18 U.S.C. §§ 1951(a) and 2 (Rizo Sr.);
>
> Count Sixteen – Possession of cocaine, with intent to distribute, on December 31, 1994, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Lazaro).
>
> Because the other eleven individuals named in the indictment are not before us, we address neither those individuals nor any counts of the indictment charging only those individuals.

proceeds for his role in the offense.)  The santo would report the information to Rizo Sr. and his son Evelio Rizo Jr. ("Evelito").  Next, the santo would make a couple of small, controlled drug purchases from the targeted victim while other members were conducting surveillance to obtain information about where the victim kept the drugs and drug proceeds (the "stash-house").  Once the stash-house was identified, members would conduct the rip-off by posing as police officers and forcibly robbing the victims by raiding the stash-house, often at gunpoint.  Proceeds of the rip-off were taken back to the Rizos' home in Hialeah, Florida, where Evelito and Rizo Sr. would tally the robbery proceeds and distribute them to members of the group.  If any member of the group was arrested, the group would post bond and hire counsel to ensure that the member would not cooperate with authorities and would not provide incriminating information about the group.

Abel and Rizo Sr. were arrested on June 3 and July 10, 1996, respectively, pursuant to the first superseding indictment.  On November 15, 1996, they entered pleas of not guilty to the charges in the second superseding indictment.  Felix was arrested on October 29, 1996, and Lazaro was arrested on November 6, 1996.  They also pleaded not guilty.  The four appellants went to trial, along with two

4

others.[4]  A jury found the appellants guilty as charged (except Rizo Sr., who was acquitted on Count Eleven, a possession count).  The district court subsequently dismissed Counts Six and Ten (firearms counts) against Rizo Sr., pursuant to Fed. R. Crim. P. 29.[5]  The court denied all other motions by the appellants for acquittals or new trials.  Thereafter, the court imposed the following sentences: Abel received 468 months' imprisonment, Felix received 324 months' imprisonment, and Lazaro and Rizo Sr. each received life imprisonment.  Each appellant also was sentenced to five years' supervised release.

## II.

The appellants contend that their sentences violate Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 143 L. Ed. 2d 311 (2000).  They did not raise

---

[4] Jerry Dean Crespo and Leonardo Cuellar went to trial with the appellants.  Crespo was convicted of Counts One and Sixteen; Cuellar was convicted of Counts One, Five, Six, Eight, Nine, Ten, Fourteen, and Fifteen (attempted Hobbs Act robbery on November 25, 1994). Crespo and Cuellar initially took appeals with the appellants, but subsequently dropped their appeals.

Of the remaining nine members of the fifteen indicted conspirators, three entered guilty pleas before trial, two were arrested after the trial, and four (including Evelito) are fugitives.

[5] Rule 29 provides that the district court "shall order the entry of judgment of acquittal . . . if the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  The court had reserved decision on Rizo Sr.'s motion for judgment of acquittal until after the jury verdict, pursuant to Fed. R. Crim. P. 29(b).

timely constitutional objections on the <u>Apprendi</u> issues,[6] and we therefore review

their <u>Apprendi</u> claims for plain error. See <u>United States v. Candelario</u>, 240 F.3d

1300, 1303-06 (11th Cir. 2001). The four prongs of plain error review are: (1)

there must be error; (2) the error must be plain; (3) the error must affect the

appellant's substantial rights; and (4) the error must "seriously affect[] the fairness,

integrity, or public reputation of judicial proceedings." <u>Johnson v. United States</u>,

520 U.S. 461, 467, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997); <u>see also</u> Fed.

R. Crim. P. 52(b); <u>United States v. Swatzie</u>, 228 F.3d 1278, 1281 (11th Cir. 2000).

Before we may correct an error that was not timely raised, all four prongs must be

satisfied. See <u>Candelario</u>, 240 F.3d at 1309.

## A.

Abel received concurrent sentences of 168 months' imprisonment on Count

One (conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. § 846)

and Count Two (possession of cocaine, with intent to distribute, in violation of 21

---

[6] None of the four appellants raised a constitutional objection at or before sentencing based on the requirement that the jury must determine the quantity of drugs beyond a reasonable doubt. <u>See generally</u> <u>United States v. Candelario</u>, 240 F.3d 1300 (11th Cir. 2001).

U.S.C. § 841(a)(1) and 18 U.S.C. § 2). He also received concurrent terms of five years' supervised release on these counts.[7]

The Supreme Court established in Apprendi, 530 U.S. at ___, 120 S. Ct. at 2362-63, that "any fact [other than a prior conviction] that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Applying Apprendi's constitutional principle to drug cases proceeding under 21 U.S.C. § 841, we have held that the quantity of drugs must be charged in the indictment and proven to a jury beyond a reasonable doubt if a defendant is to be sentenced under a penalty provision of 21 U.S.C. § 841 (such as section 841(b)(1)(A) or section 841(b)(1)(B)) that contains a quantity amount. United States v. Rogers, 228 F.3d 1318, 1327 (11th Cir. 2000). If an indictment contains no allegation of drug quantity and the jury convicts but fails to make a quantity determination, a defendant is subject to the penalties prescribed in 21 U.S.C. § 841(b)(1)(C), which requires a sentence of not more than twenty

_____

[7] Abel was sentenced at an offense level of 35 and a criminal history category of I. His sentences, when cumulated, mandated 468 months' imprisonment. In addition to the concurrent terms of 168 months' imprisonment for Counts One and Two, Abel received 60 months' imprisonment on each of Counts Three, Eight, and Nine; 60 months' imprisonment on Count Four; and 240 months' imprisonment on Count Ten. The sentences for Counts One, Two, Three, Eight, and Nine were to run concurrently; the sentences for Counts Four and Ten were to run consecutively to each other and consecutive to the concurrent sentences on the other counts. (Counts Four and Ten were firearm counts, which meant the sentences on those counts had to be imposed consecutively, pursuant to 18 U.S.C. § 924(c)(1)(D)(ii) and U.S.S.G. § 5G1.2.) Terms of three years' supervised release were imposed on each of Counts Three, Four, Eight, Nine, and Ten; all supervised release terms were to run concurrently.

years' imprisonment for possession of an unspecified quantity of cocaine.[8] Id. at 1327.

We have held, however, that "there is no error, plain or otherwise, under Apprendi where the term of imprisonment is within the statutory maximum set forth in § 841(b)(1)(C) for a cocaine offense without regard to drug quantity." United States v. Gerrow, 232 F.3d 831, 834 (11th Cir. 2000); cf. Candelario, 240 F.3d at 1306 ("[T]here is an error if the defendant's sentence exceeds the maximum sentence allowed by a statute without regard to quantity."). In the instant case, Abel's sentences of 168 months' imprisonment on Counts One and Two fall below the twenty year maximum prescribed by section 841(b)(1)(C). There is therefore no error under Apprendi.[9]

---

[8] 21 U.S.C. § 841(b)(1)(C) reads, in pertinent part:

In the case of a controlled substance in schedule I or II except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years . . . . [and if] any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment of not more than 30 years . . . .

Cocaine is a schedule II drug. 21 U.S.C. § 812, Schedule II. 21 U.S.C. § 841(b)(1)(A) provides a penalty of ten years to life imprisonment for possession of at least 5 kilograms of cocaine. 21 U.S.C. § 841(b)(1)(B) provides a penalty of five to forty years' imprisonment for possession of at least 500 grams, but less than 5 kilograms, of cocaine.

[9] 21 U.S.C. § 841(b)(1)(C) requires a supervised release term of "at least 3 years in addition to such term of imprisonment." Abel's sentences of five years' supervised release on Counts One and Two are not plain error. See Gerrow, 232 F.3d at 835 (holding that a term of more than three years' supervised release under 21 U.S.C. § 841(b)(1)(C) does not meet the "plain" requirement of plain error review, but declining to decide whether 18 U.S.C. § 3583 provides the maximum term of supervised release for a defendant sentenced under 21 U.S.C. § 841(b)(1)(C)); see also United States v. Pratt, 239 F.3d 640, 646-48 (4th Cir. 2001) (holding that

B.

Count One of the indictment charged Felix with conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. § 846. The jury convicted Felix and the district court sentenced him, pursuant to 21 U.S.C. § 841(b)(1)(A), to a term of 324 months' imprisonment and five years' supervised release on Count One.[10]

Felix satisfies the first two prongs of plain error review. His sentence of 324 months' imprisonment exceeds the maximum of twenty years' imprisonment prescribed by section 841(b)(1)(C). This error is plain. See Candelario, 240 F.3d at 1309 (holding that an Apprendi error in a drug case is plain on direct appeal).

Felix fails, however, to satisfy the third prong of plain error review because he is unable to carry his burden of demonstrating that the error affected his

---

a sentence of five years' supervised release under 21 U.S.C. § 841(b)(1)(C) is not error at all, because section 841(b)(1)(C) provides for "at least 3 years" of supervised release and 18 U.S.C. § 3583 does not provide otherwise); United States v. Heckard, 238 F.3d 1222, 1236-37 (10th Cir. 2001) (same); United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000) (same). But see United States v. Meshack, 225 F.3d 556, 578 (5th Cir. 2000) (holding that 18 U.S.C. § 3583 limits a sentence of supervised release imposed under 21 U.S.C. § 841(b)(1)(C) to a term of three years).

[10] Felix was also sentenced to 240 months' imprisonment on Counts Five and Eight and 60 months imprisonment on Count Six. The terms of imprisonment were to be served concurrently on all except Count Six, which was a consecutive sentence. (Count Six was a firearm count, which meant that the sentence on that count had to be imposed consecutively, pursuant to 18 U.S.C. § 924(c)(1)(D)(ii) and U.S.S.G. § 5G1.2.) This meant that Felix's sentences combined to total 384 months' imprisonment. The district court sentenced Felix based on an offense level of 40 and a criminal history category of I. Supervised release terms of three years were set as to Counts Five, Six, and Eight. All supervised release terms were to run concurrently.

substantial rights.  As he admitted in an objection to the Pre-Sentence Investigation Report ("PSI") and at the sentencing hearing, Felix personally possessed four kilograms of cocaine during a rip-off in October 1993.[11]  Therefore, a minimum quantity of four kilograms was not in controversy.  Four kilograms of cocaine exceeds the threshold amount necessary for sentencing under 21 U.S.C. § 841(b)(1)(B), which requires a finding of at least 500 grams of cocaine.  Because section 841(b)(1)(B) prescribes a sentencing range of five to forty years' imprisonment, and because Felix's sentence of 324 months' imprisonment is less than forty years, we find that Felix's substantial rights were not violated by the error in his sentencing.[12]  See United States v. Pease, 240 F.3d 938, 944 (11th Cir. 2001).  We need not visit the fourth prong of plain error review since Felix has not satisfied the third prong.  See Candelario, 240 F.3d at 1312.

C.

---

[11] At trial, Jorge Gonzalez (a co-conspirator who had pleaded guilty) testified that Felix was in actual possession of four kilograms of cocaine during this rip-off.  He further testified that an additional fifty kilograms of cocaine were obtained during the rip-off.  Felix only conceded possession of four kilograms of cocaine, and we therefore rely upon that number.  (Felix stated in his objections to the PSI and at sentencing that his base offense level should be calculated on the basis of four kilograms of cocaine.  The defense arrived at this amount because it was the lowest quantity that Felix was "alleged to have personally possessed" (emphasis added).)

[12] 21 U.S.C. § 841(b)(1)(B) requires a supervised release term of "at least 4 years in addition to such term of imprisonment."  Felix's sentence of five years' supervised release on Count One is not plain error.  See Gerrow, 232 F.3d at 835.

Lazaro was sentenced on Count One (conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. § 846) and Count Sixteen (possession of cocaine, with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2) to concurrent life sentences.[13]  Concurrent terms of five years' supervised release were also set for these counts.

Lazaro satisfies the first two prongs of plain error review.  His sentences of life imprisonment exceed the maximum of twenty years' imprisonment prescribed by 21 U.S.C. § 841(b)(1)(C), and the error is plain.

Lazaro fails to satisfy the third prong of plain error review – his substantial rights were not affected.  Count Sixteen was based on a rip-off that occurred on December 31, 1994.  The only testimony at trial relating to an amount involved in the rip-off was that 326 kilograms of cocaine were obtained.  Of these 326 kilograms, Lazaro personally received twenty-five kilograms for his active role in the rip-off.[14]  Lazaro did not object to or contest this amount at trial, and he did not

---

[13] Lazaro was also sentenced on Counts Seven and Eight to concurrent terms of 240 months' imprisonment; these sentences were to run concurrently with the life sentences on Counts One and Sixteen.  Concurrent three year terms of supervised release were set as to Counts Seven and Eight.  The district court sentenced Lazaro based on an offense level of 44 and a criminal history category of III.

[14] This testimony came from Jorge Gonzalez.  See supra note 11.  Gonzalez testified that he was present during this rip-off and then testified as to the quantity involved.  Additionally, Carlos Gustavo De La Teja (another co-conspirator who had pleaded guilty) testified for the prosecutionthat the amount was 325 kilograms, and that Lazaro received 25 kilograms as his share of the rip-off.  He further testified that Lazaro and Jerry Dean Crespo (a co-defendant) sold

11

put on any contrary testimony (either at trial or at sentencing) as to a different amount.[15] Given the undisputed testimony that 326 kilograms of cocaine were involved in Count Sixteen, we find that there was no way the jury could convict on Count Sixteen and yet determine that the quantity involved was less than five kilograms of cocaine. 21 U.S.C. § 841(b)(1)(A) authorizes a sentence of ten years to life imprisonment for possession of five kilograms or more of cocaine. Because the jury must have found at least five kilograms on Count Sixteen, Lazaro's substantial rights were not affected by a sentence of life imprisonment on Count Sixteen, pursuant to section 841(b)(1)(A). See United States v. Wims, ___ F.3d ___, No. 98-3684 (11th Cir. 2001).

Neither were Lazaro's substantial rights affected by a sentence of life imprisonment on Count One (conspiracy). The jury's conviction on Count Sixteen necessarily subsumes the conviction on Count One for Apprendi review purposes, for the possession which constituted Count Sixteen was a part of the conspiracy.[16]

---

him 14 kilograms that they had received from the rip-off.

[15] Lazaro did object to the attribution of 326 kilograms to him from the rip-off at issue, but he based his objection solely on the unreliability of the witnesses who testified as to drug quantity. He did not offer any contrary testimony on quantity. Rather, Lazaro only put on alibi testimony by four defense witnesses (including Lazaro himself). The alibi was that Lazaro was at a New Year's Eve party the entire evening (from 6:00 P.M. to 2:00 A.M.), which would have rendered it impossible for him to be involved in the rip-off.

[16] Count Sixteen was listed as overt act number 33 in Count One of the indictment. Further, Count One alleged that on December 31, 1994, Lazaro (and others) possessed 326

Therefore, a finding of at least five kilograms on Count Sixteen suffices as a finding of at least five kilograms on Count One. Lazaro's substantial rights were thus not affected by a sentence of life imprisonment on Count One, pursuant to section 841(b)(1)(A).[17]

Because Lazaro fails to satisfy the third prong of plain error review, we need not visit the fourth prong.

## D.

### 1.

Rizo Sr. was sentenced to a term of life imprisonment on Count One (conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. § 846). The court also imposed a term of five years' supervised release for Count One.[18]

---

kilograms of cocaine in the robbery as part of the conspiracy. Count One also alleged, as overt act number 36, that Lazaro and Jerry Dean Crespo delivered approximately 13 kilograms of cocaine to Carlos Gustavo De La Teja. See supra note 14.

[17] Because we find that sentencing under section 841(b)(1)(A) was proper, we hold that Lazaro's terms of five years' supervised release are proper. See 21 U.S.C. § 841(b)(1)(A) (requiring that the court impose "at least 5 years" of supervised release when a defendant possesses five or more kilograms of cocaine).

[18] The district court also imposed sentences of 240 months' imprisonment on Counts Five, Eight, Nine, and Fourteen; all sentences were to run concurrently. Sentences of three years' supervised release were imposed on each of these other five counts; all supervised released terms were to run concurrently. Rizo Sr.'s offense level was 46 and his criminal history category was I.

Rizo Sr. satisfies the first two prongs of plain error review. His sentence of life imprisonment exceeds the maximum of twenty years' imprisonment prescribed by 21 U.S.C. § 841(b)(1)(C). This error is plain.

Rizo Sr. fails, however, to satisfy the third prong of plain error review, for his substantial rights were not affected by the error. The indictment charged, as the first overt act in furtherance of the conspiracy, that Rizo Sr. drove a car "containing ten (10) packages of cocaine wrapped in duct tape" in Salem County, New Jersey on June 25, 1987. The ten packages each contained one kilogram of cocaine. Rizo Sr. pleaded guilty in New Jersey state court to possession of these ten kilograms of cocaine, which were confiscated in a traffic stop. Counsel for Rizo Sr. conceded at closing argument, "[The prosecutor] is right, there is no question but that [Rizo Sr.] had the ten kilograms of cocaine, he pled guilty to possessing the ten kilograms of cocaine." Because these ten kilograms of cocaine from the New Jersey conviction constituted part of the conspiracy charged in Count One, the jury necessarily found more than five kilograms of cocaine in connection with Count One. 21 U.S.C. § 841(b)(1)(A), which authorizes a sentence of ten years to life imprisonment, requires a finding of at least five kilograms of cocaine. Because the jury found that

14

more than five kilograms of cocaine were involved in Count One, Rizo Sr.'s

substantial rights were not affected by a sentence of life imprisonment.[19]

Because Rizo Sr.'s substantial rights were not affected by the error in his

sentencing, we need not address the fourth prong of plain error review.[20]

2.

---

[19] We would affirm Rizo Sr.'s sentence even if this ten kilogram quantity were not a part of the conspiracy. Although more than 150 kilograms of cocaine were attributed to Rizo Sr. at sentencing as part of the relevant conduct, none of the other counts for which he was convicted carried drug quantities as necessary components of the jury's verdict. Therefore, without the ten kilogram amount that we have deemed a necessary part of Count One, the district court could have properly sentenced Rizo Sr. to a maximum of only twenty years' imprisonment on Count One. However, this would not be grounds for reversal, notwithstanding the court's imposition of a life sentence, because the error would not have affected Rizo Sr.'s substantial rights. This is because, on remand, the district court would be obligated under the Sentencing Guidelines to sentence Rizo Sr. to a combined term of imprisonment that comports with his "total punishment." U.S.S.G. § 5G1.2 ("Sentencing on Multiple Counts of Conviction"). ("Total punishment" is the "combined length of the sentences," which is "determined by the adjusted combined offense level." U.S.S.G. § 5G1.2, Commentary.) If the maximum sentence for Count One was twenty years, consistent with 21 U.S.C. § 841(b)(1)(C), then the district court would have to fashion Rizo Sr.'s sentences consecutively (rather than concurrently) until it could produce a "combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d). Rizo Sr.'s offense level of 46 (and criminal history category of I) dictate mandatory life imprisonment, thereby requiring the district court to impose consecutive sentences sufficient to equal life imprisonment. Because consecutive sentences combining to equal life imprisonment are effectively the same as one sentence of life imprisonment (served with some lesser, concurrent sentences), Rizo Sr.'s substantial rights would not be affected if we affirmed the sentence on Count One. See United States v. Sturgis, 238 F.3d 956, 960-61 (8th Cir. 2001) (holding that there was not plain error, notwithstanding Apprendi, in a sentence that exceeded the statutory maximum without regard to drug quantity due to a lack of "prejudice," since the district court, on remand, would have to impose the same "total punishment" through imposing consecutive sentences pursuant to U.S.S.G. § 5G1.2(d)); United States v. White, 238 F.3d 537, 543 (4th Cir. 2001) (same); United States v. Page, 232 F.3d 536, 544-45 (6th Cir. 2000) (same).

[20] Because we find that sentencing under section 841(b)(1)(A) was proper, Rizo Sr.'s term of five years' supervised release was also proper. See supra note 17.

Rizo Sr. also asserts that <u>Apprendi</u> requires the jury to determine whether he was a leader or organizer for purposes of sentencing. Because we have held that <u>Apprendi</u> does not apply to relevant conduct under the Guidelines, <u>United States v. Maldenaldo Sanchez</u>, 242 F.3d 1294, ___ (11th Cir. 2001), we hold that there was no <u>Apprendi</u> error in the district court's failure to require the jury to determine whether Rizo Sr. was a leader or organizer.[21] <u>See</u> <u>United States v. Jackson</u>, 240 F.3d 1245, 1249 (10th Cir. 2001) (holding that <u>Apprendi</u> does not alter a district court's ability to adjust a defendant's offense level for role in the offense, pursuant to U.S.S.G. § 3B1.1); <u>United States v. Caba</u>, 241 F.3d 98, 101 (1st Cir. 2001) (same).

III.

---

[21] We also reject Rizo Sr.'s contention that the district court improperly adjusted his offense level four levels for his role as a leader or organizer in the offense, pursuant to U.S.S.G. § 3B1.1(a). Given the overwhelming evidence of Rizo Sr.'s coordination of the rip-off scheme, the district court's determination that he was a leader or organizer was not clear error. <u>See</u> <u>United States v. Rodriguez De Varon</u>, 175 F.3d 930, 938 (11th Cir. 1999) (en banc).

The appellants raise a number of other issues, all of which fail.[22]  Because there was no error in the appellants' convictions, and because any errors in their sentencing did not affect their substantial rights, the convictions and sentences are

AFFIRMED.

HILL, Circuit Judge, concurs in the result.

---

[22] The appellants waived the issue of the district court's need to recuse itself by failing to raise it at the first available opportunity.  See Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc., 140 F.3d 898, 913 (11th Cir. 1998).  Rizo Sr.'s contention that the district court failed to conduct an adequate McLain hearing (United States v. McLain, 823 F.2d 1457 (11th Cir. 1987)) regarding his lawyer's continuing representation fails because Rizo Sr. validly waived his right to conflict-free counsel.  The appellants' objections based upon the sufficiency of the evidence fail because the evidence was not insufficient as a matter of law and the evidence supported the convictions.  The appellants' contentions that the district court abused its discretion in various evidentiary rulings at trial are meritless.  Finally, there was no error in the Government's closing argument, particularly since the allegedly prejudicial references were merely rebuttal to inflammatory defense comments during closing.